Terri Lee HALDERMAN et al.

v.

PENNHURST STATE SCHOOL AND
HOSPITAL et al.

Civ. A. No. 74–1345.

United States District Court,
E.D. Pennsylvania.

July 28, 1983.

David Ferleger, Herbert B. Newberg, Philadelphia, Pa., for Terri Lee Halderman.

Thomas M. Kittredge, Philadelphia, Pa., for Bucks, Chester and Delaware Counties.

Robert B. Hoffman, Deputy Atty. Gen., Harrisburg, Pa., for the Commonwealth of Pennsylvania.

Thomas Gilhool, Public Interest Law Center, Philadelphia, Pa., for Pennsylvania Ass'n for Retarded Citizens.

Herbert B. Newberg, Philadelphia, Pa., for David Ferleger, Esq.

Pamela P. Cohen, Philadelphia, Pa., for Pennhurst Parents Ass'n.

Mitchell W. Dale, Civil Rights Division, Dept. of Justice, Washington, D.C., R. Stephen Barrett, Asst. County Sol., Norristown, Pa., for Montgomery County.

Marc H. Myers, Asst. City Sol., Philadelphia, Pa., for Philadelphia County.

MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

This case is a class-action brought in 1974 on behalf of retarded residents of Pennhurst State School and Hospital ("Pennhurst"), who alleged that the conditions of their confinement at Pennhurst violated their state statutory, federal statutory, and constitutional rights. In 1977, this Court, based on the evidence presented at a 32-day trial, set forth findings of fact and conclu-

sions of law and determined that the rights of the plaintiff class were being violated by the conditions of residence and treatment at Pennhurst (*see* 446 F.Supp. 1295, *aff'd,* 612 F.2d 84, *rev'd and remanded,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694, *aff'd,* 673 F.2d 628, *cert. granted,* 457 U.S. 1131, 102 S.Ct. 2956, 73 L.Ed.2d 1348 (1982)). This Court's relief, as modified by the Third Circuit's first en banc decision in this matter, requires that each class member receive minimally adequate habilitation in the least restrictive environment. Habilitation is a term of art which, among mental retardation professionals, means treatment of an individual which will afford him a reasonable chance to cope as effectively as his own capacities permit with the demands of his own person and his environment and to raise the level of his physical, mental, and social efficiency (*see* 446 F.Supp. at 1317). As part of this injunctive remedy, the defendants have been ordered to provide class members with an individual habilitation plan, which constitutes a blueprint for the retarded person's habilitation in the least restrictive, most normalized environment feasible. The IHP is drafted by a team of mental retardation professionals which includes but is not limited to the retarded person's case manager (who is a county employee) and Pennhurst staff (who are state employees), as well as the retarded person's parent, guardian, or certified advocate (provided when the retarded person has no parent or relative to speak for him in the planning process).

Pursuant to this Court's Orders (*see* Order of March 17, 1978, as amended April 28, 1980), an IHP was drafted for P.M., then a 12-year old. P.M. is a small (4 feet tall, 65 pounds) severely retarded boy who possesses some skills and potential for improvement. In late 1981, P.M.'s IHP was completed. It called for the movement of P.M. from confinement at Pennhurst to a community living arrangement in Chester County. On October 13, 1981, the County Mental Health and Mental Retardation Officer issued notice of this proposed community placement. On October 19, 1981, W.M.,

P.M.'s father, requested a hearing on his objections to the planned transfer. Pursuant to this Court's Order of April 24, 1980, the Hearing Master appointed by this Court held a hearing for the purpose of determining whether W.M.'s objections to community placement justified overturning the professional determination of the IHP planning team. The hearing was held on November 24, 1981 and was attended by P.M., his parents, witnesses in support of their case, the County through its representatives, including staff members of P.M.'s proposed community living arrangement, and staff members of Pennhurst. Based on the evidence presented at the hearing, the Hearing Master found that the planned community facility would be more beneficial to P.M.'s habilitation than would continued residence at Pennhurst.

P.M.'s parents, who placed him in the custody of the state mental retardation system nearly 10 years ago, took exception to the Hearing Master's Report, contending that they had an absolute right to veto any change in his current care. The parents also sought a stay of the Hearing Master's Order permitting P.M. to be moved to the community facility in accordance with his professionally drafted IHP. Based on the evidence presented at the hearing, this Court found that the Hearing Master's findings were not clearly erroneous and also found that the parents, having committed their son to the state system of professional care for the retarded, could not dictate the exact contours of P.M.'s habilitation (*see* 533 F.Supp. 661, 666–68 (E.D.Pa.1982)) and denied the parent's motion for a stay.

In rendering this decision, this Court recognized that parents' interest in directing the upbringing of their children is cognizable and substantial (533 F.Supp. at 666). The Court also observed that "[p]arents who place their children in private facilities are in a position to veto some aspects of their child's habilitation programs in such facilities, and if the parents' views are not accepted by the staff of the facility they may remove the child from the facility."

533 F.Supp. at 667. The Court then weighed the parents' preference in favor of Pennhurst against P.M.'s liberty interest in not being unnecessarily confined and in P.M.'s right to receive minimally adequate habilitation in the least restrictive environment. The Court concluded that P.M.'s interests outweighed those of his parents (*see* 533 F.Supp. at 667–68).

P.M.'s parents appealed. On May 10, 1983, the Third Circuit reversed and remanded the matter to this Court, 707 F.2d 702. Judge Aldisert, writing for the panel, concluded that this Court had accorded insufficient weight to the parents' wishes. The case was remanded to this Court to apply the proper standard of weight to be accorded to the parents' views in connection with the habilitation of their son. Judge Aldisert, writing for the majority, concluded that the parents possessed a "substantial right to direct the upbringing of their minor children" which "can only be overcome either by a showing of abuse or neglect or by proof of significant governmental interest running counter to the express parental desires." At 710.

In reviewing the record before the Court as of February 1982, Judges Aldisert and Rosenn concluded that the record did not show a sufficiently significant governmental interest in favor of community placement to overcome the presumption in favor of the parental preference for continued residence at Pennhurst. In a separate concurrence, Judge Rosenn stated that this matter should be "remanded to the district court with directions to reconsider the record and give the views of the parents appropriate weight." At 715. In a footnote, Judge Rosenn stated

> If there have been any changes in circumstances since the time of the original hearings in this matter, I see no reason why the district court should not have an opportunity to consider such changes in the proceedings on remand.

At 715, n. 6. Judge Sloviter in her dissenting opinion also stated that a substantial period of time has passed between this Court's findings and the Court of Appeals opinion:

> We have been told there are only two remaining children of school age currently at Pennhurst.... P.M. has now been in the community living arrangement for more than a year, and we know absolutely nothing about P.M.'s adaptation and progress in the intervening period. Since the panel disposition is to remand, and Judge Rosenn agrees with me that changed circumstances may be relevant to the district court's ultimate decision, I assume that this issue is open for consideration by the district court.

At 720–21.

Plaintiffs' counsel, in his response to the motion of P.M.'s parents (filed on July 13, 1983) to return P.M. to Pennhurst, avers that currently "there is no place at Pennhurst for P.M. to return to. Pennhurst is closing the unit (Wilson Hall I) on which P.M. formerly resided. There are no children at Pennhurst in any school program ... and there is nobody at Pennhurst compatible with P.M. in age and level of disability. There is no appropriate grouping for him to be placed into." The facilities and programs currently available at Pennhurst for P.M. and P.M.'s present status in the community are factors which should be taken into account in weighing the rights of P.M.'s parents in accordance with the standards set forth by the Third Circuit. The Court has therefore determined that the matter should once again be referred to the Hearing Master. The Court will remand this matter to the Hearing Master with instructions to hold a hearing and to determine all facts necessary to decide this issue based on the situation at the present time. In the event P.M.'s parents object to community placement, the Hearing Master should give deference to their views in accordance with the legal standard set forth by the Third Circuit to this updated record.

An appropriate order will be accordingly entered.