UNITED STATES of America,
Plaintiff-Appellee,

v.

LOCAL 359, UNITED SEAFOOD WORK-ERS, Smoked Fish & Cannery Union, United Food and Commercial Workers International Union, AFL–CIO, CLC, Executive Board and Officers of Local 359, United Seafood Workers, Smoked Fish & Cannery Union, United Food and Commercial Workers International Union, AFL–CIO, CLC, Anthony Cirillo, President, Dennis Faicco, Secretary–Treasurer, Michael Esposito, Vice President, Perry Fiori, Vice President, Richard Dominici, Vice President, William Bell, Recorder, Thomas Tripoulas, Vice President, Fulton Fish Market Welfare Fund, Nina Andrew, Executive Administrator, Anthony Cirillo, Trustee, Dennis Faicco, Trustee, Fulton Fish Market Pension Fund, Nina Andrew, Executive Administrator, Anthony Cirillo, Trustee, Dennis Faicco, Trustee, Genovese Organized Crime Family of La Cosa Nostra, Thomas Contaldo, Capo, Carmine Romano, Member, Colombo Saggese, Member, Vincent Romano, Peter Romano, Robert La Carrubba, Thomas La Carrubba, Joseph Macario, Carmine Russo, Elio Albanese, Victor Grande, Charles Chiappone, Jerry Giammarino, Vincent Christopher, Robert Fox, Gerard Albanese, Rosario Leanzo, Robert Gillio, Gennaro Prisinzano, Giuseppe Serrantonio, Joseph Dilella, Carmine Sarnelli,

Joseph Crivelli, John J. Crivelli, Anthony Crivelli, Louis Demeo, John Gallo, Dominic Lategano, Gerard Guadagno, Associates, and Fulton Market Employers Association and Associated Purveyors, Defendants,

Jerry Giammarino, Robert Fox, Gerard Albanese, Gennaro Prisinzano, Dominic Lategano, Joseph Macario, Carmine Russo, Victor Grande, Charles Chiappone, Vincent Christopher, Joseph Dilella, Carmine Sarnelli, and John J. Crivelli, Defendants–Appellants.

Nos. 499, 500, Dockets 94–6103, 94–6105.

United States Court of Appeals,
Second Circuit.

Argued Jan. 12, 1995.

Decided May 15, 1995.

Peter C. Sprung, Asst. U.S. Atty., New York City (Mary Jo White, U.S. Atty. for the S.D. of N.Y., Steven M. Haber, Asst. U.S. Atty., New York City, on the brief), for appellee.

Gerald J. McMahon, New York City, for defendants-appellants.

Before: KEARSE, McLAUGHLIN and CABRANES, Circuit Judges.

KEARSE, Circuit Judge:

These consolidated appeals from decisions of the United States District Court for the Southern District of New York, Thomas P. Griesa, *Chief Judge,* arise from the implementation of an April 15, 1988 consent judgment (the "Consent Judgment" or "Judgment") entered in a civil suit brought by the United States against numerous defendants in connection with the operation of the Fulton Fish Market (the "Market") in lower Manhattan. The government's suit asserted that the Genovese Organized Crime Family ("Genovese Family") and 29 of its alleged members and associates had conducted, and were continuing to conduct, the affairs of the Market through a pattern of racketeering activity that included extortion, theft from interstate shipments, loansharking, illegal gambling, and wire fraud. It alleged that, through a system of payoffs and threatened and actual violence, the Genovese Family dominated the Market by controlling the crews that load and unload seafood and conspiratorially dividing the market for those services. The Consent Judgment permanently enjoined 25 of the defendants, including the 13 appellants, from engaging in racketeering activity at the Market and from using any unlawful means to control competition in the loading and unloading businesses; it also called for an administrator (the "Administrator") to, *inter alia,* monitor the Market, submit proposed rules and regulations, and investigate possible violations of the injunction.

In the first appeal before us, No. 94–6103, 13 loaders and unloaders at the Market (the "Market defendants") challenge the validity of a February 17, 1994 order extending the term of the Administrator, which had expired on January 1, 1994. They contend that the court lacked the power to order a retroactive extension. In the second appeal, No. 94–6105, five Market defendants who own unloading crews, to wit, defendants Jerry Giammarino, Robert Fox, Gerard Albanese, Gennaro Prisinzano, and Dominic Lategano (collectively the "unloader defendants") appeal from a judgment affirming the Administrator's imposition of fines against them for engaging in a scheme to suppress competition in the unloading business, in violation of the Consent Judgment. The unloader defendants contend that the Administrator's decision was not supported by substantial evidence. For the reasons below, we reject the contentions of the appellants on both appeals and affirm the district court's order and judgment.

## I. BACKGROUND

The procedural background is not in dispute. In May 1988, the district court appointed Frank H. Wohl, Esq. to serve a four-

year term as Administrator under the Consent Judgment. Thereafter, as detailed in Part I.B. below, the court extended the Administrator's term several times.

The Consent Judgment gives the Administrator authority to impose a range of sanctions, including fines, suspensions, and debarment from working or doing business at the Market, against any defendant found by the Administrator to be in violation of the injunction. An affected party has the right under the Judgment to ask the district court to review any of the Administrator's proposed sanctions, and certain sanctions can become effective only if approved by the court.

A. *The Administrator's Imposition of Sanctions*

Following his appointment, the Administrator commenced an extensive investigation of the Market's operations. A staff of investigators interviewed hundreds of truckers, wholesalers, and other suppliers. Virtually all of the truckers stated that they did not select the unloading crew to which they were assigned; some stated that they had tried to use a different crew but had been told that they could not. The investigators found only one trucker who stated that he had been able to change unloading crews of his own volition; and he stated that he was able to make that change only because one of his suppliers had gone out of business and because of the Administrator's presence in the Market.

The investigators also interviewed, to the extent that they would cooperate, loaders and unloaders. Fox stated that none of his customers had ever changed to another unloading crew and that he had never acquired any customers from any other crew. Giammarino stated that he would not unload another crew's regular trucks unless that crew asked him to. Albanese, Prisinzano, and Lategano, and to an extent Giammarino, invoked their Fifth Amendment privileges against self-incrimination and refused to answer most questions as to how they obtained their customers or how incoming trucks came to be unloaded by particular crews.

As a result of these investigations, the Administrator gave notice that he intended to recommend the imposition of sanctions against the unloader defendants for the collusive elimination of competition in unloading services. Those defendants requested an opportunity to oppose sanctions by showing the existence of such competition. The Administrator thereafter conducted seven days of evidentiary hearings, at which he received documentary evidence and the testimony of four government-affiliated witnesses involved in the Market investigations and one supplier witness, Silvio Catena, called by the unloader defendants. Catena testified that in February 1991 his employer had switched unloaders by transferring its business from Fox to Albanese. The defense also presented four letters from truckers and wholesalers who stated that they, like Catena, had been able to switch unloaders without adverse consequences.

Following the conclusion of the hearings, the Administrator issued a report finding overwhelming evidence that the unloader defendants had violated the Consent Judgment through their continued conspiracy to control the unloading market and to allocate individual truckers to particular unloading crews, and concluding that sanctions should be imposed. (Statement of Reasons Supporting Imposition of Sanctions dated June 18, 1992 ("Administrator's Sanctions Decision").) As proof of the existence of the market-allocation scheme, the Administrator found, *inter alia*, (1) a "prevailing understanding" in the Market that trucking companies were not free to determine which unloader's services they would use (*id.* at 28), and the absence of any unloader solicitation of each others' customers; (2) unwarranted delays inflicted on truckers, who were required to wait for the services of their assigned unloader even when other crews were available; (3) admissions by Giammarino, Fox, and others that they were the exclusive unloaders for certain suppliers and would not unload the trucks of other unloaders' customers; (4) the lack of price competition, manifested in to-the-penny uniformity in the basic prices charged by all of the unloaders; and (5) the extraction by Giammarino, Prisinzano, and Lategano of unwarranted supplemental charges totaling approximately $100,000 a year.

The Administrator rejected as not credible the unloader defendants' evidence purporting to demonstrate that some customers had in fact switched unloaders. He noted that Catena's testimony as to a switch by his employer was undercut by, *inter alia,* his testimony that the services of both Fox and Albanese had been used at the same time (*id.* at 30), and his prior statements to investigators that he would not attempt to change unloaders for fear that it would " 'start a war' " with the current unloader (*id.* at 29). The Administrator concluded that "there was no 'switch' " (*id.* at 30) by Catena's employer, but that even if there had been, there was no credible evidence that any other customer had been able to switch unloaders. He found that the four letters introduced by the unloader defendants were not credible, noting that (a) in interviews with the investigators, the owners of the companies supposedly authoring two of the letters stated that they had never changed unloaders; (b) the third company had indicated that while there had been a switch of unloaders, it occurred without the company's request and without explanation; and (c) the company that purportedly sent the fourth letter gave no address or telephone number and could not be found.

On the basis of his findings, the Administrator imposed fines ranging from $20,000 to $65,000 on Giammarino, Fox, Albanese, Prisinzano, and Lategano and ordered the suspensions of Giammarino, Albanese, and Lategano for periods ranging from three to six months. The unloader defendants timely objected.

The district court, in an opinion dated February 3, 1994, 1994 WL 38679 ("Sanctions Opinion"), affirmed the fines, concluding that "[t]he evidence overwhelmingly supports the factual findings of the Administrator." *Id.* at 12. However, the court declined to enforce the suspensions of Albanese, Lategano, and Giammarino, because it was concerned that the suspensions might impair the legitimate unloading functions in the Market. *Id.* at 3–4, 14.

B.  *Extensions of the Administrator's Term*

The Consent Judgment provided that the Administrator was to "remain in office for no less than four (4) years from the date of [his] appointment by the Court," and that

> [u]pon an appropriate showing by the administrator or plaintiff United States of America, with notice to and an opportunity to be heard by the defendants who have consented to entry of this Consent Judgment, the Court may extend the term of the administrator as it sees fit.

Consent Judgment ¶ 13. The Judgment placed no upper limitation on the length of the Administrator's term.

The initial four-year term expired on May 3, 1992. Prior to that date, the Administrator moved for an extension of his term on the grounds that his continued presence in the Market was needed to achieve compliance with the injunctive provisions of the Consent Judgment, to finalize methods of preventing future violations, and to complete ongoing investigations of possible additional violations. The Administrator stated that the unloader defendants' refusals to disclose information had prolonged the investigations. Over objection by the defendants, the court granted the Administrator's motion, extending his term until May 29, 1992; a subsequent order extended the term until July 1, 1992.

Additional extension orders were signed, largely without objection from defendants, on June 30, 1992, November 2, 1992, and March 2, 1993, June 30, 1993, and October 26, 1993. The orders dated November 2, 1992, and March 2, 1993, were signed on the day after the expiration of the prior term. The June 30, 1993 order mistakenly "extended" the Administrator's term "until July 1, 1993," the day on which the then-current extension was scheduled to expire, and the court's October 26, 1993 order accordingly corrected that error, stating that the term had in fact been extended until October 1, 1993. The October 26, 1993 order extended the Administrator's term from October 1, 1993, until January 1, 1994.

The June 30, 1992 order noted that one reason for extending the term was that the Administrator had proposed the imposition of sanctions against the unloader defendants. Subsequent orders noted that the unloader defendants had objected to the proposed

sanctions, and that the district court was reviewing the Administrator's decision. The October 26, 1993 order further stated that if the court affirmed the sanctions, the Administrator should remain in office to assist in their implementation. In addition, the court noted that the Administrator was continuing to investigate possible further violations of the Consent Judgment and had drafted a set of proposed regulations for the Market's unloading business; both functions would require his continuation in office.

Though the court's October 26, 1993 order extended the Administrator's term only until January 1, 1994, there was no request for a further extension of that term until mid-February 1994. On February 16, 1994, the government submitted a proposed extension order to the district court and sent a copy via facsimile to the Market defendants' counsel. On February 17, the court signed an order stating that, pursuant to the provisions of the Consent Judgment and the inherent powers of the court, "the term of the Administrator is extended *nunc pro tunc* until July 1, 1994." February 17, 1994 Order at 4. The court noted its recent affirmance of the Administrator's imposition of money sanctions on the unloader defendants for violations of the Consent Judgment and the principle that " 'all unloading crews have the right to solicit business from any party bringing fish into the Fulton Fish Market,' " February 17, 1994 Order at 2 (quoting Sanctions Opinion at 14), and stated that the Administrator should remain in office "to assist in the enforcement of the [district court's] Sanctions Decision," February 17, 1994 Order at 2. The court reiterated that an extension was also needed to permit the finalization of regulations for the operation of the Market and to permit the completion of ongoing investigations.

## II. DISCUSSION

The unloader defendants contend that the fines imposed against them are not supported by substantial evidence. The Market defendants contend that the district court lacked the power to enter the February 17, 1994 order extending the Administrator's term retroactively. We reject both contentions.

### A. *The Sanctions*

■ The challenge to the imposition of sanctions against the unloader defendants does not require extended discussion. While this Court has not defined the precise standard to be applied in reviewing a disciplinary sanction imposed by an administrator under a consent decree, *see, e.g., United States v. International Brotherhood of Teamsters* ("*IBT*"), 19 F.3d 816, 819 (2d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 199, 130 L.Ed.2d 130 (1994); *United States v. IBT,* 998 F.2d 120, 124 (2d Cir.1993), it is clear that the factual findings of an administrator are "entitled to great deference," *United States v. IBT,* 905 F.2d 610, 616 (2d Cir.1990) (noting that consent judgment called for district court to apply "same standard of review applicable to review of final agency action under the Administrative Procedure Act"). *See also United States v. IBT,* 14 F.3d 183, 185 (2d Cir.1994) (affirming administrator's findings under "our deferential standard of review").

Under any standard, the Administrator's credibility assessments in the present case are unimpeachable, and its factual findings are amply supported by the record. We affirm the judgment approving the fines imposed on the unloader defendants substantially for the reasons stated in the Administrator's Sanctions Decision and the district court's Sanctions Opinion.

### B. *The Retroactive Extension of the Administrator's Term*

■ We also conclude for several reasons that the district court's February 17, 1994 order extending the Administrator's term retroactively was well within the court's power. While consent decrees "should be construed basically as contracts" between the litigants, *United States v. IBT,* 998 F.2d 1101, 1106 (2d Cir.1993) (quoting *United States v. ITT Continental Baking Co.,* 420 U.S. 223, 236–37, 95 S.Ct. 926, 934, 43 L.Ed.2d 148 (1975)), "[f]ew persons are in a better position to understand the meaning of a consent decree than the district judge who oversaw and approved it," *Berger v. Heckler,* 771 F.2d 1556, 1576 n. 32 (2d Cir.1985) (inter-

nal quotes omitted). Further, a consent decree is an order of the court and thus, by its very nature, vests the court with equitable discretion to enforce the obligations imposed on the parties. *See, e.g., EEOC v. Local 580, International Association of Bridge, Structural & Ornamental Ironworkers,* 925 F.2d 588, 593 (2d Cir.1991) ("[T]hough a court cannot randomly expand or contract the terms agreed upon in a consent decree, judicial discretion in flexing its supervisory and enforcement muscles is broad."); *Berger v. Heckler,* 771 F.2d at 1567–68 (consent decrees are "hybrid" in the sense that, though construed as contracts, "they are ... enforced as orders"). The court's interest in protecting the integrity of such a decree "justifies any reasonable action taken by the court to secure compliance." *Id.* at 1568 (internal quotes omitted). "Until parties to such an instrument have fulfilled their express obligations, the court has continuing authority and discretion—pursuant to its independent, juridical interests—to ensure compliance." *EEOC v. Local 580, International Association of Bridge, Structural & Ornamental Ironworkers,* 925 F.2d at 593. These principles require affirmance of the February 17, 1994 order extending the Administrator's term.

First, both the terms of the Consent Judgment and the parties' practice under it supported the district court's view that the Judgment itself gave the court authority to extend the Administrator's term *nunc pro tunc.* The Judgment subjected the consenting defendants to a permanent injunction, and the purpose of the provision for an Administrator was "to ensure and promote compliance" with that injunction (Consent Judgment ¶ 4). The Judgment required that the Administrator initially have at least a four-year term, and it set no maximum. It gave the court express authority to extend the Administrator's term "as it sees fit." (*Id.* ¶ 13.) Given these provisions, the district court's interpretation of the Judgment as authorizing a retroactive extension, if the court saw fit, was correct.

The conduct of the parties also supported the district court's interpretation of the Judgment as authorizing a *nunc pro tunc*

extension. On several occasions prior to 1994, orders were entered extending a term that technically had already expired. The October 26, 1993 order was signed 25 days after the previous extension had expired. Defendants did not appeal any of those retroactive extensions.

Finally, it was well within the district court's inherent power to extend the Administrator's term *nunc pro tunc* on the ground that such an extension was necessary to assist the court in ensuring compliance with the Judgment. As the court noted in its Sanctions Opinion and its February 17, 1994 order, there had been pervasive violations of the Consent Judgment justifying the imposition of substantial fines. The court stated that it needed the Administrator to assist in enforcement of the sanctions imposed for the already established violations, as well as to complete his rule-drafting function and his ongoing investigations into other possible violations. In the circumstances, it was well within the court's considerable discretion to determine that the continued presence of the Administrator was desirable and to enter its order extending his term *nunc pro tunc.*

## CONCLUSION

We have considered all of appellants' contentions on these appeals and have found them to be without merit. The district court's order extending the Administrator's term is affirmed. The judgment affirming the imposition of monetary sanctions against defendants Giammarino, Fox, Albanese, Prisinzano, and Lategano is affirmed.