97 F.3d 29
 W. ALTON JONES FOUNDATION; Wenonah Development Company;
Foster and Foster; Foster Bam; Alma Foster
Davis; Cities Service Company; Harry
C. Bader and Ann D. Friel,
Plaintiffs-Appellees,
v.
CHEVRON U.S.A., INC., f/k/a Gulf Oil Corporation, Defendant-Appellant.
 No. 1952, Docket 96-7371.
 United States Court of Appeals,
Second Circuit.
 Argued May 30, 1996.
Decided Sept. 27, 1996.
 
 Andrew L. Frey, New York City (Philip Allen Lacovara, Stephen M. Shapiro, Mayer, Brown & Platt, New York City, Banks Brown, McDermott, Will & Emery, New York City, William I. Edlund, Craig E. Stewart, Pillsbury Madison & Sutro, San Francisco, CA, of counsel), for Defendant-Appellant.
 W. DeVier Pierson, New York City (Peter J. Levin, Pierson Semmes and Bemis, New York City, Barry H. Garfinkel, Robert E. Zimet, James W. Brown, Skadden, Arps, Slate, Meagher & Flom, New York City, Oliver S. Howard, Teresa B. Adwan, Gable & Gotwals, Tulsa, OK, of counsel), for Plaintiff-Appellee.
 Before: LUMBARD, VAN GRAAFEILAND, and LEVAL, Circuit Judges.
 LEVAL, Circuit Judge:
 
 
 1
 In this appeal, we consider whether an entity covered by the literal definition of the plaintiff-class in a class action settlement may nevertheless escape the preclusive effect of the judgment under the highly unusual circumstances presented here.
 
 
 2
 Shareholders of Cities Service Company brought a class action against Gulf Oil Corporation in the Southern District of New York alleging claims arising out of a tender offer made by Gulf for Cities stock. After ten years of litigation, this action was settled.
 
 
 3
 Throughout the duration of the class action, Cities had been engaged in a different court in litigation against Gulf, alleging claims arising out of an aborted merger agreement between them.
 
 
 4
 The judgment in the class action and the documents advising class members of the settlement and of their opportunity to request exclusion from the class defined the class in a confused and inconsistent manner, at times in terms that would encompass Cities, at times in terms that unquestionably would exclude it. None of the participants in the class action, including Gulf, believed Cities to be a part of the class, and the settlement provided no benefits to Cities. Furthermore, for three and a half years after the settlement, Gulf and Cities continued to litigate Cities' claims without Gulf attempting to terminate the litigation on the basis of the prior judgment.
 
 
 5
 Gulf now contends Cities was a member of the plaintiff-class and that the judgment in the class action bars Cities from continuing its independent action. We disagree. We hold that in these circumstances, Cities is not barred and that the district court properly denied Gulf's application to enjoin Cities from continuing its suit.
 
 Background
 
 6
 On June 17, 1982, in an effort to defend against a hostile acquisition by Mesa Petroleum Corporation, Cities entered into an agreement with Gulf to be acquired by merger. The merger agreement called for Gulf's subsidiary to purchase approximately 41.5 million shares of Cities common stock through a tender offer, following which the companies would be merged. The next day, in accordance with the merger agreement, Cities purchased 4.1 million shares of its own stock from Mesa in an off-market transaction. Gulf's tender offer commenced on June 22, 1982.
 
 
 7
 On July 29, 1982, the Federal Trade Commission started an action against Gulf, alleging that its proposed acquisition of Cities would violate antitrust laws. On August 6, 1982, Gulf terminated the merger agreement and the tender offer, citing the FTC suit.
 
 
 8
 Immediately, Cities sued Gulf in Oklahoma state court alleging state law claims of breach of the merger agreement and common law fraud, and seeking damages in excess of $100 million. Thereafter, numerous purchasers and tenderers of Cities stock and call options filed actions against Gulf in various federal courts, alleging breach of federal securities laws, breach of contract and fraud in connection with the tender offer. The shareholder actions were consolidated as a class action in the Southern District of New York before Judge Kram. Both Cities' suit and the class action alleged that Gulf had changed its mind about the wisdom of the merger agreement and had used the FTC's action in bad faith as a pretext for terminating its agreements.
 
 
 9
 The Unified, Consolidated and Amended Class Complaint defined the plaintiff-class as all persons "(i) who tendered to Gulf shares of Cities Service common stock in accordance with the terms of and pursuant to the Tender Offer; and/or (ii) who purchased shares of Cities Service common stock or calls on the open market during the period June 17, 1982 to August 7, 1982, inclusive...." (Emphasis added.) Because Cities neither tendered to Gulf nor purchased its shares on the open market, it was not included within the definition of the class, as stated in the complaint.
 
 
 10
 The class was certified by Judge Kram in an opinion dated September 23, 1986. This order dropped purchasers of Cities common stock from the description of the plaintiff-class and defined the class as "consist[ing] of all shareholders of Cities Service who tendered stock to Gulf pursuant to the Tender Offer, and all purchasers of Cities Service call options on the open market [from June 17, 1982 to and including August 7, 1982]." (Emphasis added.) It is undisputed that under this definition of the class, Cities would not be a member, as it neither tendered to Gulf, nor purchased call options on the open market (or otherwise).
 
 
 11
 Thereafter, the parties were directed to send notice to all class members. The Notice of Pendency of Class Action reinstated the purchasers of common stock into the class definition and deleted the "on the open market" limitation, describing the plaintiff-class as including "all persons or entities who ... purchased shares of Cities Service common stock" within the relevant time period--a definition that on its face would have included Cities. This notice offered class members the opportunity to opt out.
 
 
 12
 Ten years after the original actions were filed (on January 13, 1992), an agreement was reached to settle the class action. The Stipulation of Settlement defined the class as "[a]ll persons or entities who during the period June 17, 1982 to and including August 7, 1982: (1) tendered shares of Cities Service Company ... common stock to ... Gulf ... or (2) purchased Cities Service common stock; or (3) purchased call options on Cities Service stock." (Emphasis added.) Class members were to be given another opportunity to exclude themselves from the class.
 
 
 13
 The settlement provided, in part, for a $34 million settlement fund for the benefit of the class members and for the release of all claims of class members that were brought or might have been brought in the action. Purchasers of Cities stock were entitled to the benefit of the settlement, however, only if they purchased their stock on or after July 13, 1982. Accordingly, the settlement could provide no benefits for Cities, which purchased its stock on June 18, 1982.
 
 
 14
 In accordance with the Stipulation of Settlement, class members received a Notice of Settlement and Proof of Claim and Release Form, which advised them of the terms of the settlement, including their obligation to opt out of the class in order to avoid releasing their claims or to file a timely proof of claim in order to participate in the settlement fund. Once again these documents were inconsistent in their description of the scope of the plaintiff-class. The Notice of Settlement described the class as consisting of all persons who "purchased shares and/or call options" of Cities during the relevant period and persons who tendered to Gulf.
 
 
 15
 The Proof of Claim and Release Form, however, revitalized the "on the open market" limitation. Although it was addressed, in part, to all purchasers of Cities stock during the relevant period, it stated at the outset:
 
 
 16
 If you were a purchaser on the open market of Cities Service Company ("Cities") common stock or call options ... you may be a member of the Class certified herein, and may be entitled to participate in the $34,000,000 Settlement Fund.
 
 
 17
 (Emphasis added.) As noted above, because Cities had purchased its shares in an off-the-market transaction with Mesa, it was not included within this definition of the class.
 
 
 18
 On May 21, 1992, Judge Mukasey signed a Final Order and Judgment, approving the terms of the settlement. The judgment defined the class consistently with the settlement as including all purchasers of stock within the relevant time period without an "on the open market" restriction, but it incorporated by reference the Proof of Claim and Release Form which defined the class differently (and in a way which excluded Cities). The judgment permanently enjoined all class members (other than persons who had requested exclusion from the class) from asserting any claims that were, or could have been, asserted in the class action against Gulf.
 
 
 19
 Meanwhile, discovery and pre-trial litigation in Cities' Oklahoma action continued. On November 13, 1995, three and a half years after the settlement of the stockholders' class action, Gulf moved for summary judgment in the Oklahoma action on the ground that Cities, having never opted out of the plaintiff-class, was barred by the settlement from prosecuting its claims against Gulf. The Oklahoma court denied Gulf's motion for summary judgment.
 
 
 20
 Gulf then moved before Judge Mukasey to enjoin Cities from proceeding with the Oklahoma action. Judge Mukasey, who presided over the settlement of the class action, concluded that it was "clear ... from the circumstances surrounding this action, the entry of the final judgment of this action, and the parties' conduct after that final judgment was entered, that any language in the final judgment that would include Cities as a member of the class was not intended by the parties to this action to have that effect." Thus, he denied Gulf's motion for injunctive relief. Gulf appeals. We affirm.
 
 Discussion
 
 21
 I. The Intentions of the Parties in Litigating and Settling the Class Action
 
 
 22
 Judge Mukasey concluded that no one, not Gulf, not Cities, not the lawyers for the class, nor the court, intended to include Cities within the class. He observed that "the conduct of the parties in this litigation and in the Oklahoma litigation shows unmistakably that Cities was never intended to be a member of the class, an impression confirmed by statements submitted by counsel who represented the class in this litigation." We agree.
 
 
 23
 A trial court's findings regarding the parties' intentions will be respected on appeal unless they are clearly erroneous. See Manning v. Energy Conversion Devices, Inc., 13 F.3d 606, 609 (2d Cir.1994) (district court's findings regarding intended meaning of settlement term reviewed for clear error); Healy v. Rich Prods. Corp., 981 F.2d 68, 73 (2d Cir.1992) ("A district court's findings with respect to the expression of the contracting parties' intent will not be disturbed unless they are clearly erroneous."). Moreover, we note that, " '[f]ew persons are in a better position to understand the meaning of a [settlement] than the district judge who oversaw and approved it.' " United States v. Local 359, United Seafood Workers, 55 F.3d 64, 68 (2d Cir.1995) (quoting Berger v. Heckler, 771 F.2d 1556, 1576 n. 32 (2d Cir.1985)). We do not consider Judge Mukasey's finding to be "clearly erroneous"; indeed, in our view, he was entirely correct.
 
 
 24
 Gulf's course of conduct in the Oklahoma action after the class action settled makes it clear that Gulf did not view the class settlement as foreclosing Cities from pursuing its claims in Oklahoma. See Local 359, 55 F.3d at 69 (finding that parties' conduct supported the district court's interpretation of the judgment); Ocean Transp. Line, Inc. v. American Philippine Fiber Indus., 743 F.2d 85, 91 (2d Cir.1984) (explaining that "parties' interpretation of the contract in practice, prior to litigation, is compelling evidence of the parties' intent"); Restatement (Second) of Contracts § 202 cmt. g ("The parties to an agreement know best what they meant, and their action under it is often the strongest evidence of their meaning."). After the class action was settled in the district court on May 21, 1992, Gulf waited for three and a half years before moving (on November 13, 1995) for summary judgment in Cities' Oklahoma action on the basis of the preclusive effect of the class settlement. The district court found that Gulf's failure to argue to the Oklahoma court that the action was barred by the settlement for over three years was "relevant and persuasive evidence that the parties to this case never considered that Cities would be included in the class."
 
 
 25
 In response Gulf argues, as it did in the district court, that moving for summary judgment prior to November of 1995 would have been futile. Gulf contends that until June of 1993, when an alternative dispute resolution proceeding in a related action was completed, the Oklahoma action was dormant. In addition, Gulf notes that in July 1993, when Cities noticed its intention to resume active litigation in Oklahoma, Cities also requested permission to amend its complaint to add claims based on events which occurred after the termination of the merger agreement. Gulf argues that because these new claims were not barred by the settlement agreement, it had no reason to make its motion for summary judgment sooner.[1]
 
 
 26
 We cannot credit Gulf's argument. Although Gulf's res judicata and release defenses may not have protected it from the newly added claims, they would have provided a defense to the old claims. We see no reason why, if Gulf believed all along that Cities was included within the class, Gulf would have delayed moving to dismiss those claims. If Gulf really did believe the claims were barred, then by waiting three and a half years to make its summary judgment motion, Gulf wasted extraordinary amounts of its own, its adversary's, and the court's time and money litigating issues which would have been rendered irrelevant if the settlement precluded Cities' claims. For example, in September 1993, Cities moved for partial summary judgment based on the theory that Judge Mukasey's rulings in the class action precluded some of Gulf's contentions. In response, Gulf failed to cross-move for summary judgment based on the settlement of the class action, and made no mention of its theory that Cities' claims were precluded by the settlement.
 
 
 27
 Then, in November 1994, Cities moved to bifurcate the old and new claims. Over Gulf's opposition, this motion was granted in March 1995. Even then however, when Cities' now allegedly precluded claims were slated for a separate trial, Gulf waited another five months, until the last day allowed by the Oklahoma court for dispositive motions, before advancing the argument that these claims were precluded.
 
 
 28
 In sum, we agree with the district court that "had the parties intended to include Cities, Gulf would not have wasted a moment to point that out to the Oklahoma court and to move for appropriate relief. Indeed, the time to do that would have been either immediately after the settlement was concluded, or, at the latest, when Cities noticed its intention to resume active litigation in Oklahoma." Gulf's three and a half year delay in moving for judgment based on the settlement in the class action is powerful evidence that Gulf did not believe that the settlement barred the prosecution of Cities' claims. See Local 359, 55 F.3d at 69; Ocean Transp. Line, 743 F.2d at 91; Restatement (Second) of Contracts, § 202 cmt. g. We agree with Judge Mukasey's conclusion that Gulf did not regard Cities as part of the plaintiff-class; it contrived that theory long after the fact to extricate itself from the Oklahoma action.
 
 
 29
 Our confidence in this conclusion is supported by several other factors. First, Cities' Oklahoma claims differed in significant ways from those of the class in that they were based on different representations and agreements with Gulf and requested different relief. Although the class and Cities each raised fraud and contract claims,[2] these claims were based on different factual predicates. The class's fraud claim was brought on a fraud-on-the-market theory and arose from Gulf's allegedly fraudulent public statements; Cities' fraud claim was based on statements made privately to Cities in contract talks. Moreover, although the class attempted to use the statements made privately to Cities to support its claim, Gulf argued, and the district court agreed, that, except for two members of the class who were members of Cities' board of directors, the class was not entitled to rely on statements made to Cities. See In re Gulf Oil/Cities Serv. Tender Offer Litig., 725 F.Supp. 712, 750-53 (S.D.N.Y.1989). Had anyone considered Cities to be a member of the class, the exception would certainly have run in its favor as well.
 
 
 30
 Similarly, the class's contract claims arose from alleged misstatements in the tender offer documents, while Cities' contract claim was based on an alleged breach of the merger agreement. The class also attempted to assert claims under the merger agreement. As with the fraud claim, however, Gulf argued, and Judge Mukasey agreed, that the class could not rely on the merger agreement because the class members were not parties to the agreement. See In re Gulf Oil, 725 F.Supp. at 730. Had the class been thought to include Cities, an exception would have been necessary.
 
 
 31
 Cities and the class also requested different types of damages. The class sought damages for Gulf's alleged breach of the tender offer, measured by the difference between the tender offer price for Cities stock and the market price after Gulf terminated the offer. Cities, on the other hand, sought damages it incurred in reliance on the merger agreement and in an effort to arrange alternative transactions.
 
 
 32
 These fundamental differences between the class claims and those of Cities give strong support to Judge Mukasey's finding that none of the participants regarded Cities as a member of the class.
 
 
 33
 Second, the class settlement provided no benefits for Cities. Its purchase of its stock from Mesa occurred on June 18, 1982. While the class was sometimes defined to include all purchasers of Cities' stock from June 17 to August 7, 1982, the benefits of the settlement went only to those who purchased between July 13 and August 6, 1982. Thus, an interpretation of the plaintiff-class as including Cities would have had no effect other than to obligate Cities to file for exclusion in order to avoid losing the Oklahoma lawsuit which it had fiercely prosecuted for so many years.
 
 
 34
 Third, throughout the class action litigation, Gulf took positions inconsistent with the idea that Cities was included within the class definition. For example, Gulf argued that "Cities ... is not a party to [the class action].... Rather, Cities commenced its own litigation against Gulf in Oklahoma State Court, where it is still pending." Gulf also omitted to make reference to Cities' status as a class member at times when it would have been advantageous to do so. For example, when during the course of discovery in the class action, Gulf sought information within Cities' control, Gulf did not argue that, as a member of the class, Cities should be obligated to provide the information. Although the court did agree to require the class to provide the information, it did so because it found that the class had the obligation to make a reasonable inquiry of "third parties." In re Gulf Oil/Cities Serv. Tender Offer Litig., 82 Civ. 5253(MBM) (Dollinger, M.J.). The court found that requiring the class to consult with Cities was reasonable, not because Cities was a member of the class, but rather because the "plaintiffs and Cities have plainly parallel interests in their respective lawsuits with Gulf." In re Gulf Oil, 82 Civ. 5253(MBM) (Dollinger, M.J.) (emphasis added).
 
 
 35
 Finally, the affidavits submitted by the parties support our conclusion that no one involved in the class action intended for the settlement to have the effect of releasing Cities' claims.
 
 
 36
 Cities submitted numerous affidavits from lawyers who represented the class in the litigation and settlement.[3] In these affidavits, the lawyers state unequivocally that they never intended Cities to be included within the class definition, in part because of their belief that the inclusion of Cities "would have created the potential for an irreconcilable conflict of interest between it and the class members." Typical of these affidavits, is one submitted by Stephen D. Oestreich,[4] lead counsel for the class in negotiating and drafting the settlement agreement and the final judgment and order, which states that:
 
 
 37
 The operative understanding at the time of the Settlement continued to be that the members of the Purchaser Class had made their purchases ... on the open market. During the negotiation of the Settlement, no assertion was made by any participant that Cities Service was a member of the class or that Cities Service's claims in the Tulsa Action were subject to the Settlement. Neither I nor, to my knowledge, any member of Plaintiffs' Executive Committee considered that Cities Service was a member of the class or that it would be affected in any way by the settlement.... [N]o one involved in the Shareholder Litigation, as a party, or as counsel for any party or non-party, ever understood, believed, or imagined that Cities Service could be a member of the class.
 
 
 38
 The affidavits submitted by Gulf's lawyers, on the other hand, are striking for what they fail to say. Although they make much of the fact that they never stated that Cities was excluded from the class definition, the affiants do not assert that they ever understood, intended, or believed, the class definition to include Cities.
 
 
 39
 Even more telling is a statement made by a lawyer for Gulf in the course of a proceeding in the Oklahoma action in August 1993, almost a year after the settlement of the class action. In response to the Oklahoma judge's question why Gulf had advocated that the Oklahoma suit be stayed until the conclusion of the New York proceedings, Gulf's counsel responded that there "may have been a feeling that if there were settlements reached [in New York], settlements could be reached in [Oklahoma]. Obviously that didn't happen or hasn't happened yet...." It is clear Gulf would not have made that statement if it believed the class settlement disposed of the Oklahoma litigation.
 
 
 40
 Based on all of this evidence, we find that Judge Mukasey correctly concluded that no one intended that Cities be included within the definition of the class. Gulf is essentially seeking an undeserved windfall in its effort to terminate Cities' lawsuit on the basis of an afterwards-contrived argument based on a technical reading of documents that were never intended or understood to apply to Cities.
 
 II. The Existence of an Ambiguity
 
 41
 Gulf argues even if it is true that the class action settlement was never intended or understood to include Cities in the plaintiff-class, the district court erred in considering that fact. Gulf asserts that the evidence of its intentions and understanding is extrinsic to the settlement agreement and judgment and that "[e]xtrinsic evidence ... may ... be considered only if the terms of the judgment, or of documents incorporated in it, are ambiguous." Securities & Exchange Comm'n v. Levine, 881 F.2d 1165, 1179 (2d Cir.1989). Gulf contends that the terms of the settlement and the judgment unambiguously include Cities within the definition of the class, with the consequence that the district court had no right to consider extrinsic evidence to reach its conclusion that Cities was not included in the class. We disagree.
 
 
 42
 The documents incorporated into the judgment defined the plaintiff-class in conflicting ways. The judgment expressly incorporated by reference the Stipulation of Settlement, including the Proof of Claim and Release Form. Although the Stipulation defined the class as including "all purchasers," the Proof of Claim used a more restricted term, limiting purchasers to those who purchased "on the open market." Thus it is not merely the case that ambiguity occurred in occasional documents during the course of the litigation; the ambiguity is found in the very judgment alleged to be preclusive.
 
 
 43
 Nor do we rely solely on the fact that the judgment, through incorporation by reference, included inconsistent definitions. Inconsistencies would not necessarily amount to ambiguity if, in the circumstances, they had no likelihood of misleading. At times mistakes are obviously just that. Although they give incorrect information, they carry no realistic likelihood of misleading because it is so clear they are mistakes. Here, that was not the case. Taken in context, especially considering the long history of confusion as to the definition of the plaintiff-class, the reference in the Proof of Claim and Release Form to purchasers "on the open market" had a high capacity to mislead.[5] As noted above, the Unified Consolidated and Amended Class Complaint had identified the purchaser component of the plaintiff-class as covering only those who "purchased ... on the open market." And Judge Kram's class certification order of September 23, 1986, also contained a limitation to "open market" purchasers. When the Proof of Claim and Release Form identified the class in terms of purchasers "on the open market," this formulation was consistent with those important prior documents. Thus, it was by no means apparent that the definition in the Proof of Claim was a mere mistake to be disregarded. Rather, it would have been logical under the circumstances to read the document that excluded Cities from the class as having done so intentionally. The likelihood that the definition would be interpreted in this way makes the judgment documents functionally and realistically ambiguous.
 
 
 44
 Of course, it is true that one who made a thorough study of all the pertinent documents would probably have concluded that, as between the inconsistent definitions, the erroneous one was the definition that incorporated the "open market" limitation. Gulf points out that paragraph 46 on the thirty-second page of the Stipulation of Settlement, which was on file in the office of the Clerk of the Court, provides that "[a]ny inconsistency between the Stipulation and the exhibits attached hereto shall be resolved in favor of the Stipulation." Gulf argues that Cities could have inspected this provision, which would have eliminated the ambiguity by telling which of the inconsistent versions prevails. In addition, among the judgment documents, the class was more frequently defined without the "open market" limitation than with.
 
 
 45
 These observations may be true but they are not determinative. For purposes of the rule of interpretation that bars consideration of extrinsic evidence in the absence of ambiguity, ambiguity is a practical concept. In the context of this class action litigation and the frequent instances of inconsistency in the class definition, the documents comprising the consent judgment were, as a practical matter, ambiguous and misleading, even if an exhaustive search might have provided a key for resolution of the ambiguity. Where documents giving notice of settlement of a class action are prepared in such a way as to mislead a potential class member into believing that it is not a class member, and therefore has no need to opt out of the class in order to preserve an independent lawsuit, the recipient will not be required to scour all other potentially pertinent documents in an effort to discover whether the reassuring documents sent to it were inaccurate.
 
 
 46
 We conclude that because of the ambiguity as to whether the plaintiff-class included all purchasers in the relevant period or only those who purchased on the open market, principles governing the interpretation of contracts and judgments authorize reference to extrinsic evidence. The extrinsic evidence powerfully supports Judge Mukasey's finding that the settlement agreement and the judgment entered on it were never understood to encompass Cities' off-market purchase. Cities therefore had no obligation to file an opt-out election to exclude itself from the class. Its claim against Gulf in the Oklahoma courts was not precluded by the settlement of a class action of which it had never been considered a part, and Judge Mukasey was correct in denying Gulf's application for injunctive relief barring Cities from pursuing the action.Conclusion
 
 
 47
 We affirm the ruling of the district court.
 
 
 
 [1]
 Gulf also argues that it raised its release and res judicata defenses in May of 1994 in its answer to Cities' amended complaint. Apart from the fact that this document was not filed until two years after the settlement, the allegations of release and res judicata, included with at least 14 other affirmative defenses, were set forth only in general terms, without a word of explanation what they referred to or how they arose. There was no mention of the class action, much less of the theory that Cities was a member of the plaintiff-class
 Judge Shallacross, who presided over the Oklahoma action, found that there was no indication, prior to Gulf's motion for summary judgment, that Gulf intended to rely on the class action settlement. At oral argument on Gulf's motion, Judge Shallacross expressed her surprise at Gulf's contention that Cities was barred by the judgment in the class action from proceeding in Oklahoma state court. She stated:
 I never heard, during all of the two years that I have been assigned to this case, that Gulf considered Cities a member of the class and, because they were a member of the class, they could not proceed in Oklahoma in this action. Now, I understand that ... there were [defenses] claiming release and res judicata. I found nowhere, though, in the pleadings, until ... your motion for summary judgment ... [any] argument [or] allegation by Gulf that Cities' claims had been released because they were a member of the class.
 In our view, this naked pleading of release and preclusion, two years after the settlement, does not demonstrate that Gulf believed during the class action that Cities was a member of the class.
 
 
 [2]
 In addition, the class also alleged violations of the federal securities laws
 
 
 [3]
 In addition, Cities submitted affidavits of its own attorneys, stating that they never believed, and had no indication from Gulf, that Cities might be considered a member of the class. Cities' attorneys also offered evidence that Gulf never thought that Cities was bound by the settlement. For example, Oliver S. Howard, an attorney for Cities, stated in his affidavit that:
 As one of Cities' counsel present [during the hearing on the approval of the settlement], I know that none of those counsel, not Cities' and not Gulf's, regarded those proceedings in the shareholder action as having any impact on the pending "company v. company" case in Oklahoma. Rather, both before and after (and sometimes even during) that hearing, counsel in the Oklahoma case, both for Cities and for Gulf worked on scheduling additional discovery in the Oklahoma case. Not one word was stated that the class settlement and Judgment was somehow putting an end to Cities' claims in Oklahoma.
 
 
 [4]
 Oestreich has not been retained by Cities, nor was he paid for providing his affidavit
 
 
 [5]
 The evidence suggests that even Gulf's lawyers were confused by the conflicting definitions of the class. A year after notice was sent to the class, advising class members of the existence of the class action and their opportunity to exclude themselves from the class, a lawyer for Gulf, in papers submitted to the Oklahoma Supreme Court, stated that the federal cases "are proceeding on a class basis, consisting of a certified class ... of all Cities shareholders who tendered their shares to Gulf or who purchased Cities' shares or options on Cities' shares on the market." (Emphasis added.)