United States v. Nee

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of July, two thousand fourteen.

PRESENT:
> BARRINGTON D. PARKER,
> PETER W. HALL,
> RAYMOND J. LOHIER, JR.,
> *Circuit Judges.*

_____

United States of America,

> *Plaintiff-Appellee,*

> v.                                                    12-4883

Patrick Nee, Levy Messinetti,

> *Appellants,*

N.Y.C. District Council of N.Y.C.
& Vicinity of the United Brotherhood
of Carpenters, Paschal McGuinness,
Robert J. Cavanaugh, Irving Zeidman,
First Vice President, Frederick W. Devine,
Second Vice President, Francis J.P. McHale,
Secretary-Treasurer, Anthony Salerno,
AKA Fat Tony, Vincent DiNapoli,
Peter DeFeo, Alexander Morelli,
AKA Black Alex, Liborio Bellomo,
AKA Barney, Anthony Fiorino,

**District Council, Peter Thomassen,**
**John W. Holt, Sr., John R. Abbatemarco,**

                                *Defendants.*[1]

_____

| | |
|---|---|
| **FOR APPELLANTS:** | Patrick Nee, *pro se*, Maspeth, N.Y., Levy Messinetti, *pro se*, Lawrence, N.Y. |
| **FOR APPELLEE:** | Benjamin H. Torrance, Tara M. La Morte, Sarah S. Normand, Assistant United States Attorneys, *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, N.Y. |

Appeal from an order of the United States District Court for the Southern District of New York (Berman, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of the district court is **VACATED** and the matter is **REMANDED** for further proceedings.

Appellants Patrick Nee and Levy Messinetti, proceeding *pro se*, appeal from the October 23, 2012 order of the district court denying their petitions for review of a "Notice of Veto," issued by court-appointed Review Officer Dennis Walsh ("RO"), which removed them from their positions as elected officers in one of the local unions that comprise the District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America (the "District Council"). The RO was

_____

[1] The Clerk of Court is directed to amend the official caption to read as shown above.

appointed, and issued the Notice of Veto, pursuant to a Stipulation and Order between the Government and the District Council. The Stipulation and Order were approved by the district court in June 2010 (the "Stipulation"). We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues presented for review.

The Stipulation provides that any "aggrieved person" may petition the district court for review of a decision made by the RO pursuant to Paragraph 5(b) of the Stipulation and that, in reviewing such a decision, the court must "apply the same standard of review applicable to review of final agency action under the Administrative Procedure Act." *See* Stipulation ¶ 11. It further provides, however, that nothing in the Stipulation "precludes . . . any aggrieved person from petitioning the Court on the ground that the Review Officer has exceeded his authority under th[e] Stipulation." *Id*.

Here, a liberal construction of the Appellants' *pro se* petitions for review indicates that they challenged both the propriety of the RO's Notice of Veto and his authority to remove them from their positions. Prior to reviewing the propriety of the RO's action, we first examine the RO's authority under the Stipulation to remove the Appellants from their elected offices, an issue of interpretation that we review *de novo*. *See Broad. Music, Inc. v. DMX Inc.*, 683 F.3d 32, 43 (2d Cir. 2012) ("*DMX*")

3

(reviewing the interpretation of a consent decree *de novo*); *see also Doe v. Pataki*, 481 F.3d 69, 76 (2d Cir. 2007) (construction of a stipulation underlying a consent decree reviewed *de novo*).

Consent decrees (and their attendant stipulations) are to be construed "basically as contracts," *DMX*, 683 F.3d at 43 (internal quotation marks omitted), and "ordinary rules of contract interpretation are generally applicable," *Doe*, 481 F.3d at 75. When interpreting a particular provision of a consent decree, "we are required . . . to read that provision in light of the decree as a whole." *United States v. Local 1804-1, Int'l Longshoremen's Ass'n*, 44 F.3d 1091, 1097 (2d Cir. 1995). When the language of the decree is ambiguous, "a court may consider extrinsic evidence to ascertain the parties' intent, including the circumstances surrounding the formation of the decree." *United States v. Broad. Music, Inc.*, 275 F.3d 168, 175 (2d Cir. 2001) (internal quotation marks omitted).

In its October 23, 2012 order, the district court held that the RO "unquestionably has the power to remove elected officials" under Paragraph 5(b) of the Stipulation. *United States v. Dist. Council of N.Y.C.*, No. 90-cv-5722, 2012 WL 5236577, at *7 (S.D.N.Y. Oct. 23, 2012). In so holding, the district court relied on its prior decision construing the Stipulation. *See id.* at *6-*7 (citing *United States v. Dist. Council of N.Y.C.*, No. 90-cv-5722, 2010 WL 5297747, at *8-*9 (S.D.N.Y. Dec. 21, 2010)

4

("*Willoughby*") (holding that the RO had "been granted broad power to 'eradicate corruption'" within the union and that, under Paragraph 5(b)(iii) of the Stipulation, had been "specifically authorized to issue a veto if a person's conduct is inconsistent with the objectives of [the Stipulation]")). Reviewing the Stipulation *de novo*, we note that its language is capable of multiple interpretations and therefore ambiguous. *See Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 232 F.3d 153, 158 (2d Cir. 2000). We thus disagree with the district court's conclusion that the Stipulation "unquestionably" affords the RO the power to veto the tenure of elected local union officials.[2]

Paragraph 5(b) of the Stipulation — the provision under which the RO removed the Appellants from office — addresses the RO's "review and oversight authority," and lists a number of "matters" over which the RO may exercise that authority. *See*

---

[2] We have previously recognized that "[f]ew persons are in a better position to understand the meaning of a consent decree than the district judge who *oversaw* and *approved* it," *United States v. Local 359, United Seafood Workers*, 55 F.3d 64, 68 (2d Cir. 1995) (emphasis added) (internal quotation marks omitted), and we give deference "to the interpretation made by the district judge who approve[d] the decree," *Doe*, 481 F.3d at 76. Here, however, the case was transferred to Judge Berman shortly after Judge Haight approved the Stipulation. While Judge Berman did interpret the Stipulation close in time to its approval by Judge Haight, the rationale for according deference to the original judge who oversaw the stipulated consent decree is undercut when we are reviewing the interpretation of the Stipulation by the transferee judge.

Stipulation ¶ 5(b)(i)(1)-(4).  Included in that list is "the authority to review the persons currently holding office or employment."  *Id*. ¶ 5(b)(i)(3).  In turn, Paragraph 5(b)(iii) states that:

> Upon reviewing any matter described in [Paragraph 5(b)(i)], the Review Officer may determine that the matter reviewed . . . (c) is contrary to or violates any law or Court order entered in this case; or (d) is contrary to any fiduciary responsibility imposed by 29 U.S.C. § 501 . . .; or (e) is inconsistent with the objectives of this Stipulation and Order.  Upon such a determination . . . the Review Officer may veto or require the District Council to rescind its action, proposed action, or lack of action.

Stipulation ¶ 5(b)(iii).

The Appellants argue that the RO's veto authority is limited to "actions" under 5(b)(iii).  That is, Paragraphs 5(b)(i) and (iii) should be read as providing the RO with the authority to review and to veto "actions" taken by "persons currently holding office" only when the RO has determined that those actions were unlawful, contrary to § 501, or inconsistent with the objectives of the Stipulation, but those paragraphs do *not* provide the RO with the authority to veto the services of officers of the local union.  By contrast, the Government maintains that, having been provided the authority under Paragraph 5(b)(i) to review "persons currently holding office," the RO necessarily has the power under Paragraph 5(b)(iii) to veto an individual's appointment to or continuing occupation of an office upon concluding that

6

"officeholding by such persons" was unlawful, contrary to § 501, or inconsistent with the objectives of the Stipulation." Both interpretations are reasonable based on the language in the Stipulation. Thus an ambiguity exists.

Nor does construing the provisions by reading them in light of the Stipulation as a whole, *see Local 1804-1, Int'l Longshoremen's Ass'n*, 44 F.3d at 1097, provide further clarity. First, as the district court in *Willoughby* observed, the Government's reading finds support in the preamble of the Stipulation, which states that the purpose of the RO's position is the "eradication of corruption and racketeering as they affect union carpenters and union employers." Stipulation at 3. On the other hand, the RO's "disciplinary authority" is explicitly addressed in Paragraph 5(f) of the Stipulation, which permits the RO to initiate disciplinary proceedings against union officers or members. *See* Stipulation ¶ 5(f). This provision, Appellants argue, provides the mechanism by which the RO should have effected their removal.

While we acknowledge the government has advanced what may be a valid argument, based on a reading of the text of the Stipulation we also cannot foreclose the possibility that the plaintiffs' interpretation is correct. Given these dueling plausible interpretations of and attendant ambiguity in the language of the Stipulation, extrinsic evidence may be considered

7

"to ascertain the parties' intent, including the circumstances surrounding the formation of the decree." *BMI*, 275 F.3d at 175 (internal quotation marks omitted). Such evidence may assist the court in defining the RO's authority under Paragraph 5(b) and in determining whether there are differences between "disciplinary actions" and the actions taken against Appellants. Those questions, however, should be resolved by the district court in the first instance. *See JA Apparel Corp. v. Abboud*, 568 F.3d 390, 397 (2d Cir. 2009) ("[T]he meaning of the ambiguous contract is a question of fact for the factfinder."). For the foregoing reasons, we remand for further proceedings. *See, e.g.*, *Macey v. Carolina Cas. Ins. Co.*, 674 F.3d 125, 131 (2d Cir. 2010).

Accordingly, we **VACATE** the district court's October 23, 2012 order and **REMAND** the matter for further proceedings not inconsistent with this order. We express no opinion regarding the propriety of the RO's action.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

8