

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-4-2001

# Holland v. New Jersey Dept. Corrections

Precedential or Non-Precedential:

Docket 00-1801, 00-2356, 00-2357

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"Holland v. New Jersey Dept. Corrections" (2001). *2001 Decisions.* Paper 67.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/67

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed April 4, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 00-1801, 00-2356 and 00-2357

WALTER HOLLAND; OVESTON COX; TERR Y JACOBS;
BRIAN TAYLOR; WALTER WILLIAMS; MILDEO RAGHU;
J. JAMES ROBERSON, LUTHER GREGG; WILHELMINA
SHERROD; LILLI SMITHERMAN, as Administratrix of the
Estate of Richard Smitherman, on behalf of themselves
and all other persons similarly situated

v.

NEW JERSEY DEPARTMENT OF CORRECTIONS, THE;
**JACK TERHUNE; WILLIAM PLANTIER; SCOTT FAUNCE;
GEORGE BLASKEWICZ; JOHN SWAL; JAMES WILLIAMS;
FRANK BUDD; DAVID WIANECKI; LOUIS HELMKIN;
ARTHUR FINGERMAN; WAYNE SCHUL TZ; RONALD
ENSANA; THOMAS MORAN; MICHAEL VIGGIANO; PAUL
SCHUSTER; GREGORY DAUKSHAUS, LAWRENCE
CARPENTER; PATRICK ARVONIO; AL OR TIZ; JOSEPH
BUTLER; ROBERT MILLER; HERBERT BOWLBY;
MICHAEL DEVINE; DOMINICK CONTE; BARRY P ARKS;
RAYMOND CONOVER; DAVID TILBURY; ANTHONY
PORTO; ROBERT STEPHENS; JAMES LUTZ; FREDERICK
VALUSEK; CAROLYN ABBOA-OFFEI; L YDELL SHEERER;
CHRISTOPHER NORELLI; GEORGE KENNYBROOK;
individually and in their capacities as employees and
agents of the New Jersey Department of Corrections;
STATE LAW ENFORCEMENT CONFERENCE OF THE NEW
JERSEY STATE POLICEMEN'S BENEVOLENT
ASSOCIATION; NEW JERSEY LAW ENFORCEMENT
SUPERVISORS ASSOCIATION, PRIMARY LEVEL
SUPERVISORY LAW ENFORCEMENT UNIT; NEW JERSEY
SUPERIOR OFFICER'S LAW ENFORCEMENT
ASSOCIATION; CAPTAINS UNIT; INTERNAL AFF AIRS

INVESTIGATORS ASSOCIATION, INTERNAL AFF AIRS
INVESTIGATORS UNIT, as necessary parties pursuant to
Fed. R. Civ. Pro. 19(a)

(D.C. No. 93-cv-01683)

JAMES LUTZ

v.

LUTHER GREGG

(D.C. No. 94-cv-02391)

USA,
Plaintiff

LILLI SMITHERMAN, in her Capacity as Executrix of the
Estate of RICHARD SMITHERMAN; WALTER HOLLAND;
OVESTON COX; BRIAN TAYLOR; TERRY JACOBS;
WALTER WILLIAMS

Intervenor-Plaintiffs

v.

STATE OF NEW JERSEY; NEW JERSEY DEP ARTMENT
OF CORRECTIONS; **JACK TERHUNE, in his Official
Capacity as Commissioner of the New Jersey Department
of Corrections; STATE LAW ENFORCEMENT
CONFERENCE OF THE NEW JERSEY STATE
POLICEMEN'S BENEVOLENT ASSOCIATION; NEW
JERSEY LAW ENFORCEMENT SUPERVISORS
ASSOCIATION, PRIMARY LEVEL SUPERVISORY LAW
ENFORCEMENT UNIT; NEW JERSEY SUPERIOR
OFFICERS LAW ENFORCEMENT ASSOCIATION,
SUPERIOR OFFICERS LAW ENFORCEMENT UNIT; NEW
JERSEY SUPERIOR OFFICERS LAW ENFORCEMENT
ASSOCIATION, CAPTAIN UNIT; INTERNAL AFF AIRS
INVESTIGATORS ASSOCIATION, INTERNAL AFF AIRS
INVESTIGATORS UNIT

(D.C. No. 94-cv-03087)

2

USA,
Plaintiff

LENA HASKINS, on behalf of herself and all other persons
similarly situated,
Intervenor-Plaintiffs

v.

NEW JERSEY DEPARTMENT OF CORECTIONS, THE,
Defendant

**JACK TERHUNE; JOSEPH GLOVER, individually
and in their capacity as employees of the New Jersey
Department of Corrections,
Intervenor-Defendants

(D.C. No. 94-cv-04724)

*State of New Jersey; New Jersey
Department of Corrections;
**Jack Terhune, Appellants in No. 00-1801

*(Pursuant to F.R.A.P. 12(a))
**(Substituted Pursuant to Rule 43(c)(2))

United States of America, Appellant in No. 00-2356

Walter Holland, Oveston Cox, Terry Jacobs, Brian Taylor,
Walter Williams, Mildeo Raghu, James Roberson, Luther
Gregg, Wilhelmina Sherrod, and Lilli Smitherman, as
Administratrix of the Estate of Richard Smitherman, on
behalf of themselves and all others similarly situated, and
Lena Haskins, on behalf of herself and all other persons
similarly situated, Appellants in No. 00-2357

On Appeal From the United States District Court
For the District of New Jersey
District Judge: Honorable Joel A. Pisano

Argued: December 1, 2000

Before: BECKER, Chief Judge, RENDELL and
MAGILL,* Circuit Judges.
_____

* Honorable Frank J. Magill, United States Cir cuit Judge for the Eighth
Circuit, sitting by designation.

(Filed: April 4, 2001)

JOHN J. FARMER, JR., ESQUIRE
ATTORNEY GENERAL OF NEW
 JERSEY
MICHAEL J. HAAS, ESQUIRE
ASSISTANT ATTORNEY GENERAL
JAMES D. HARRIS, ESQUIRE
 (ARGUED)
TODD J. SCHWARTZ, ESQUIRE
DEPUTY ATTORNEYS GENERAL
Office of Attorney General of
 the State of New Jersey
R.J. Hughes Justice Complex
P.O. Box 112
Trenton, NJ 08625

Counsel for State of New Jersey,
New Jersey Department of
Corrections, and Jack Terhune, as
Appellants/Cross-Appellees

MIRIAM F. CLARK, ESQUIRE
 (ARGUED)
LEWIS M. STEEL, ESQUIRE
RACHEL S. LEVITAN, ESQUIRE
Steel, Bellman, Ritz & Clark, P.C.
225 Broadway, Suite 2501
New York, NY 10007

Counsel for Holland and Haskins
Classes as Appellees/Cross-
Appellants

4

        BILL LANN LEE, ESQUIRE
        ASSISTANT ATTORNEY GENERAL
        DENNIS J. DIMSEY, ESQUIRE
        SETH M. GALANTER, ESQUIRE
          (ARGUED)
        MARIE K. McELDERRY, ESQUIRE
        United States Department of Justice
        P.O. Box 66078
        Washington, DC 20035-6078

        Counsel for the United States as
        Appellee/Cross-Appellant

OPINION OF THE COURT

BECKER, Chief Judge.

Several employees of the New Jersey Department of Corrections (NJDOC) filed suit in the District Court for the District of New Jersey, alleging employment discrimination and harassment on the basis of race and gender at NJDOC facilities. The United States Department of Justice (DOJ) also instituted a discrimination and harassment lawsuit against NJDOC, and this case was consolidated with the employees' action to form the present lawsuit. After extensive discovery followed by vigorous negotiations, the parties, assisted by a court-appointed mediator , drafted a proposed Consent Decree aimed at r ectifying the complained-of conditions. On May 10, 1996, the District Court gave final approval to and implemented the Decree, which provided that it would be in effect for four years from the date it was implemented, and that the District Court was authorized to take "such action as may be necessary or appropriate to effectuate the purposes of this Decree."

In May 2000, motivated by certain problems with implementation, the District Court extended the Decr ee by ten months. The court rested its conclusion that it had the power to extend the Consent Decree on two bases. First, it opined that language in the Decree granted it this power. Second, the court reasoned that it possessed inherent power to enforce compliance with the pr ovisions of consent

5

decrees that it approved, and to modify such decrees in response to changed circumstances. NJDOC contests the ten-month extension of the Decree, arguing that the District Court did not have the power to extend the Decree under its terms, and that the court failed to make adequate findings to support its use of its inherent compliance enforcement or modification powers to extend the Decree.

The issue of whether the Decree itself gave the District Court the power to extend it requires us to address the proper standard of review of a district court's interpretation of a consent decree that it has approved and implemented. Several of our sister circuits have adopted "deferential de novo" as the standard of review for this situation, and the plaintiffs encourage us to do likewise. W e have difficulty understanding what the oxymoronic standar d of "deferential de novo" could mean, and r eject this approach in favor of straightforward de novo review. Interpreting the Decree de novo, we conclude that the language of the Decree does not itself confer power on the District Court to extend it.

On the other hand, it is settled that a court does have inherent power to enforce a consent decr ee in response to a party's non-compliance, and to modify a decr ee in response to changed conditions. See, e.g. , Spallone v. United States, 493 U.S. 265, 276 (1990) (stating that courts have inherent power to enforce compliance with their consent decrees); United States v. United Shoe Mach. Corp., 391 U.S. 244, 248 (1968) (noting that courts have inherent power to modify a consent decree upon an appr opriate showing). Furthermore, a court has br oad equitable power to fashion a remedy in its exercise of its compliance enforcement and modification powers when a consent decree is aimed at remedying discrimination, as is the Consent Decree in the case at bar. See Spallone, 493 U.S. at 276 (stating that a court can exercise "broad equitable powers" when enforcing compliance with a decree aimed at remedying past discrimination); Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367, 381 n.6 (1992) (r ecognizing that a court's modification power "is long-established, broad, and flexible") (internal quotes and citation omitted).

6

It is also clear that this broad remedial power can be used to extend the effective time period of a consent decree. See Chrysler Corp. v. United States, 316 U.S. 556 (1942) (consent decree extended via exercise of modification power); United States v. Local 359, United Seafood Workers, 55 F.3d 64 (2d Cir. 1995) (parts of consent decree extended via exercise of compliance enforcement power). However, a court must make specific findings that support its use of these inherent powers. See Hughes v. United States, 342 U.S. 353, 357–58 (1952) (hearing and findings of fact are required for exercise of modification power); Harris v. City of Philadelphia, 137 F.3d 209, 214 (3d Cir. 1998) (specific findings needed for exercise of compliance power).

We conclude that the District Court did not make adequate factual findings to support its exer cise of either the compliance enforcement or the modification power. The court neither identified sufficient incidents of non-compliance by NJDOC that would justify an extension of the entire Decree, nor did it specify the changed conditions that would justify the modification of the ending date of the Decree. We therefore will vacate the District Court's Order and remand for specific factual findings by the District Court, and for the District Court to extend only those parts of the Decree whose extension is warranted by those specific findings.1

_____

1. The plaintiffs have cross-appealed, contending that the District Court abused its discretion by extending the Decr ee only for ten months instead of the two years requested by plaintif fs, and that the court abused its discretion by denying their r equest for re-argument on their motion to hold NJDOC in contempt. We will summarily affirm the District Court's Order denying the plaintif fs' motion for re-argument because we are satisfied that the court did not abuse its discretion in denying it. The plaintiffs' argument that the District should have extended the Decree for two years rather than ten months fails for the same reason that we will vacate the ten month Decree extension: the District Court did not make sufficient factual findings to support an extension of the entire Decree.

I. Facts and Procedural History

A.

In June 1991, Richard Smitherman, an African-American employee of NJDOC, filed a complaint with the Equal Employment Opportunity Commission (EEOC), alleging that white officers, supervisors, and managers at NJDOC had subjected him and other black employees to constant racial remarks and slurs. Pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. S 2000e et seq., the EEOC investigated these allegations and found reasonable cause to believe that they were true. The EEOC then r eferred the complaint to the DOJ. In late 1993, the DOJ infor med the State of New Jersey that it had concluded that NJDOC had engaged in a pattern of discrimination against black employees. After the DOJ was unsuccessful in its attempts to get NJDOC to respond voluntarily to the pr oblem, the DOJ filed a complaint in the District Court for the District of New Jersey in June 1994, alleging a patter n or practice of race discrimination and harassment.2  The DOJ filed a separate complaint against NJDOC in September 1994 alleging that NJDOC had engaged in gender discrimination as well.

In April 1993, six NJDOC employees (including Smitherman) filed their own suit in the district court, alleging racial discrimination, harassment, and r etaliation against those who complained of discrimination and harassment at one NJDOC facility; this complaint was later amended to include gender discrimination claims, and other NJDOC employees joined the action as plaintif fs.3 In

_____

2. There are many defendants to this action, including the State of New Jersey. For brevity's sake, we will simply r efer to NJDOC when discussing the defendants, since NJDOC is the main defendant.

3. The amended complaint included class allegations, and defined the class as all NJDOC employees who complained of racial discrimination and harassment against African Americans at NJDOC, and all NJDOC employes who complained of sex discrimination and harassment against women at NJDOC. The Consent Decree was enter ed into before the District Court decided whether to certify the class. Because the Consent Decree and various court documents refer to counsel for the individual plaintiffs as "class counsel," we will do likewise in this opinion.

September 1994, all of the discrimination actions against NJDOC were consolidated in the District of New Jersey.4 The parties then engaged in discovery and began a 16-month period of negotiations. These negotiations culminated in a settlement agreement, which included over $5 million in damages for the class members as well as a Consent Decree. The Decree was preliminarily approved by the District Court in February 1996, and finally approved and entered by the court on May 10, 1996.

B.

The Consent Decree included broad pr ohibitions against discrimination and retaliation against African-American and female employees and specific penalties for those engaging in such conduct. The Decree also pr ovided for a comprehensive overhaul of NJDOC's method of handling employee complaints of discrimination and retaliation, special training for NJDOC employees, reporting requirements regarding discrimination complaints and discipline, and implementation of a dispute r esolution mechanism. The terms of the Decree pr ovided that it would be in effect for four years from the date it was implemented (May 10, 1996); it also provided that the District Court was authorized to take "such action as may be necessary or appropriate to effectuate the purposes of this Decree."

While NJDOC and the other defendants admitted no liability as part of the settlement, the District Court stated in its opinion and order approving the settlement agreement that "the plaintiffs' risk of establishing liability in this case does not appear to be great." Mor eover, the court noted that "[t]hroughout the negotiations, the defendant State of New Jersey has recognized the pervasive pattern of discrimination that has characterized the NJDOC during the relevant class period. . . . [T]he State of New Jersey supports the Consent Decree as the best way to eradicate

_____

4. With the consent of the parties, this case was referred to then-Magistrate Judge Joel A. Pisano, who retained jurisdiction over the proceedings after being appointed to the District Court. We will refer to all of Judge Pisano's orders and the pr oceedings before him as those of the District Court.

9

the Department of Corrections' chronic history of discrimination."

In contrast, the parties paint very differ ent pictures of the four years that the Decree was in place. Class counsel and the DOJ describe numerous violations of the Decree by the NJDOC, spanning the entire four years. NJDOC does not mention those violations; indeed, it discusses only one area in which it admits that it was substantially non-compliant with the Decree: the speed with which it completed its investigations of employee discrimination complaints, which is addressed in P 15 of the Decree. Paragraph 15 provides:

> The EED [Equal Employment Division of NJDOC] shall complete investigations and issue findings on complaints of employment discrimination within forty-five (45) days of receipt of complaints. If, under exceptional circumstances, a finding cannot be issued in this time period, class counsel and the United States shall be notified promptly in writing and given an explanation of the reasons therefor .

After NJDOC was consistently unable to meet the 45-day requirement, the parties agreed in August 1997 to extend this 45-day period to 60 days. Even after this extension, NJDOC was still unable to meet the requir ements of P 15 until March 2000, two months before the original ending date of the Decree.

Several times over the original four year ter m of the Decree, the plaintiffs asked the District Court to hold NJDOC in contempt for its "extensive and serious violations which undermined the Decree's objectives." Class Pl's Br. at 3. In their last request for contempt sanctions (on September 23, 1999), the plaintiffs also r equested that the District Court extend the Decree another two years. The District Court ruled on this request on May 10, 2000, when it declined to hold NJDOC in contempt but extended the Decree for ten months.

NJDOC's argument is based on the premise that the District Court extended the entire Decr ee based solely on: (1) NJDOC's delay in complying with P 15 of the Decree; and (2) a naked claim (made by class counsel) of

10

discriminatory discipline.[5] In contrast, the plaintiffs argue that the District Court extended the Decree not only on these bases but also on a long history of NJDOC's non-compliance with "virtually every Decree pr ovision." Class Pl.'s Br. at 8. More specifically, the plaintiffs contend that, in addition to its non-compliance with P 15, NJDOC was also in substantial non-compliance with the Decr ee when it: (i) delayed for about four months before posting the Decree in all NJDOC facilities, in violation ofP 65; (ii) delayed for more than three years the training and education of NJDOC employees on racial and gender discrimination and the implementation of the new internal complaint mechanisms, in violation of P 25; (iii) delayed the training for investigators in the Equal Employment Division, in violation of P 7; (iv) failed to conduct sufficiently thorough and proper investigations of internal discrimination complaints, in violation of various Decree provisions; and (v) failed to provide the DOJ and class counsel with information to which they wer e entitled under the terms of the Decree, in violation ofPP 32–35. Furthermore, the plaintiffs ar gue that the District Court found that the evidence of discriminatory discipline that the plaintiffs presented was sufficient to make out a prima facie case of discriminatory discipline, thus providing a further basis for the court to retain jurisdiction over this case.

C.

On May 8, 2000, the District Court held a hearing in which it announced that it was going to issue an or der extending the decree. At that time it articulated various findings intended to support the order . On May 10, 2000, the Court entered an order extending the Decree "in its entirety, pending further order, through March 1, 2001." On June 9, 2000, NJDOC appealed to this Court and applied to the District Court for a stay of the Or der. On June 22, the plaintiffs moved for furtherfindings in

_____

5. The discriminatory discipline claim was that NJDOC supervisors meted out discipline in a discriminatory fashion, punishing African-American employees more severely than white employees for the same or similar infractions.

11

support of the Order, and moved for reconsideration of their contempt motion and their motion for a two-year extension of the Decree, both of which the May 10 Order had denied. The District Court held a hearing on these motions on July 7, 2000, and denied them in an Order accompanied by a Memorandum Opinion dated July 25, 2000. Before us are NJDOC's appeal of the May 10 Order, as well as the plaintiffs' cross-appeals of the May 10 and July 25 Orders.6

Notwithstanding the timely appeals to this Court, the District Court's docket entries reflect that the plaintiffs have filed with the District Court further requests for relief under the extended Decree, including a request to hold NJDOC in contempt for its actions during the ten-month extended period. The District Court, however, has declined to rule on these requests, because it concluded that this appeal divested it of jurisdiction over the requests.7

_____

6. The District Court had jurisdiction over this case pursuant to 28 U.S.C. SS 1331 & 1345, and 42 U.S.C. S 2000e-5(f)(3). We have jurisdiction over NJDOC's appeal and plaintiffs' cross-appeals pursuant to 28 U.S.C. S 1292(a)(1).

7. Even though the March 1, 2001, ending date of the Decree extension has already passed as of the date of the filing of this opinion, this appeal is not moot for two reasons. First, the plaintiffs' cross-appeal--asking us to hold that the District Court abused its discretion by not holding NJDOC in contempt and by extending the Decree for only ten months rather than the two years plaintiffs asked for--is clearly not moot because these claims are not affected by the March 1 extension end date, and, because our analysis of whether the District Court abused its discretion by not extending the Decree for two years involves the same issues as our analysis of NJDOC's appeal, see infra note 18, our discussion of these issues in the context of NJDOC's appeal is not moot either. Second, NJDOC's appeal is not moot because of the "collateral consequences" exception to the mootness doctrine. More specifically, "a case is not moot, even if the [appellant's] primary injury is resolved, so long as the [appellant] continues to suffer some harm that a favorable court decision would remedy." Erwin Chemerinsky, Federal Jurisdiction S 2.5.2, at 130 (2d ed. 1994). In the case at bar, the District Court has delayed, pending the outcome of this appeal, its response to plaintiffs' motion to hold NJDOC in contempt for NJDOC's alleged non-compliance during the ten-month Decree extension period. This possibility of being held in contempt "casts what may well be a substantial adverse effect on the interests of the petitioning part[y]." Super Tire Engineering Co. v.

12

In order to determine what findings the District Court used as a basis for extending the Decree, we examine all of the documents arising from these hearings and Orders (i.e., the May 10 and July 25 Orders themselves, the Memorandum Opinion that accompanied the July 25 Order, and the transcripts of the May 8 and July 7 hearings). In the May 10 Order, the District Court gave a short explanation of its reasons and purposes for extending the Decree. The court stated that the purposes of the extension were to:

> (1) allow class counsel and the United States to continue to monitor the performance of the State in meeting its obligations under the consent decr ee; (2) permit the Court to have the benefit of further submissions and time in order to determine how long the consent decree ought to remain open; (3) and permit the State to demonstrate its intention, willingness, and ability to perform its obligations under the consent decree.

The reasons the District Court gave for extending the Decree were that "until approximately the first quarter of 2000 the State was not in substantial compliance with the consent decree, principally in connection with its obligation to issue timely decisions regarding discrimination complaints [i.e., P 15]; . . . and it further appearing that class counsel have raised a claim of discriminatory discipline."

NJDOC argues that it is clear from the wording of the May 10 Order that the District Court extended the Decree

_____

McCorkle, 416 U.S. 115, 122 (1974). The District Court has also delayed, pending the outcome of this appeal, its decision whether to extend the Decree beyond the ten-month extension. Because we will remand this case to the District Court for more specific factual findings that may include, for example, findings of NJDOC's non-compliance with the Decree between May 10, 2000 and March 1, 2001, the District Court may decide that a further extension of the Decr ee is warranted, which would have an "adverse effect on the inter ests" of NJDOC. Id. Thus, this appeal is also not moot under the rule set forth in Super Tire. See also Union Nat'l Bank of Pittsburgh v. Interstate Commerce Comm'n, 569 F.2d 742, 746-47 (3d Cir. 1977).

13

solely on the basis of its past non-compliance withP 15, along with a conclusory claim of discriminatory discipline. Much of NJDOC's argument rests on its contention that these two points are not a sufficient basis for extending the entire Decree another 10 months.

The District Court presented more explanation of its reasons for extending the Decree at the May 8 and July 7 hearings. The plaintiffs argue that the record from these hearings shows that the District Court based the extension on NJDOC's sum total non-compliance with the Decr ee over the four years it had been in place. While this non-compliance was "principally" in connection with NJDOC's failure to meet its P 15 obligations, the plaintiffs contend that it also includes the other incidents of non-compliance outlined at the end of Section I.B. supra, namely that NJDOC delayed employee training and education, delayed posting the Consent Decree, perfor med inadequate investigations of discrimination complaints, and failed to provide the DOJ and class counsel with r equested information.

The plaintiffs support their position by noting that at the May 8 hearing the District Court referr ed to "a number of other specific complaints" by class counsel and individual class members, in addition to NJDOC's P 15 non-compliance. The plaintiffs also point to portions of the July 7 hearing where the court, in response to NJDOC's claim that it was improper to extend the Decr ee based solely on non-compliance with P 15, detailed other pr oblems that had arisen with NJDOC's performance under the Decree aside from P 15 issues. These incidents, which the court stated are "matters of public record in connection with this case," were described by the District Court at the July 7 hearing as "an issue and a complaint about the qualifications of investigators and the training that had been given to investigators," an "issue" regar ding "the training and education of all employees, . . . an issue raised as to the racially offensive cartoon at Northern State Prison, . . . a dispute raised as to the communications that Class Counsel said they were entitled to," and"another issue . . . which had to do with whether some complaints of criminal conduct" were improperly referr ed within NJDOC. After laying out these "issues," the court stated the following:

14

> I go through all of this for the purpose of
> demonstrating that I believe that I had justifiable
> motivations in extending the entire Decree, and not
> simply one portion of it. That, in fact, there had been
> enough of a record made on issues other than the
> timing of the EED decisions, which justify the Court in
> seeing to it that all parts of the Consent Decree remain
> in force for a period of time. . . . I found there to be
> enough problems with other parts of the Decree than
> paragraph 15, to justify extending it in its entirety.

After the court made this explanation, counsel for NJDOC asked the court whether the above was a new holding as of July 7 or a clarification of a previous holding. The court replied it was both.

In the Memorandum Opinion that accompanied its July 25 Order, the court denied the plaintiffs' motion for further specific factual findings supporting the Decree extension, explaining this denial by stating that "to the extent that the Court found it necessary to reach the factual issues specified by plaintiff in this motion, the Court has done so and such findings can be found in the transcripts of several hearings held over the past year."

As noted above, the District Court also based the Decree extension on the plaintiffs' allegation of discriminatory discipline by NJDOC (i.e., that NJDOC meted out discipline to its employees in a discriminatory fashion). The court, however, did not make a finding or conclude that NJDOC engaged in discriminatory discipline, but instead stated the following regarding the discriminatory discipline claim at the May 8 hearing:

> I further find that class counsel have raised a claim of
> discriminatory discipline of corrections officers
> following the analysis of rubric of the Hazelwood case
> and others which justifies and in fact, it doesn't justify,
> it requires the court to continue to exercise jurisdiction
> over the case in order to adjudicate any legitimate
> claim of discriminatory discipline. The fact of the
> matter is that the court has not yet adjudicated this
> issue. . . . I feel that the court must not only exercise
> jurisdiction over the continuation of the dispute but

15

also entertain further proceedings. . . . I don't know how this discriminatory discipline claim is going to play out, but I do need under the--on the strength of the record that I have, I do need to exer cise, continue to exercise jurisdiction over the dispute.

NJDOC contends that the District Court never made any real findings on this issue, and that the plaintiffs have merely raised an allegation, which is not an adequate basis for extending the Decree. The DOJ counters that the above-quoted section is a finding that the evidence of discriminatory discipline was sufficient to make out a prima facie case and thus to shift the burden to the defendants to produce countering evidence under the rule in Hazelwood School District v. United States, 433 U.S. 299, 307-08 (1977).

II. Discussion

The District Court rested its conclusion that it had the power to extend the Consent Decree on two bases: (1) language in the Decree itself; and (2) its inherent power, either to enforce compliance with the pr ovisions of its consent decree or to modify a consent decr ee in response to changed circumstances. NJDOC argues that the Decree language did not give the District Court the power to extend the Decree. NJDOC also contends that a court's inherent power to enforce compliance with a consent decr ee only extends to the particular provisions that the court found were violated, so that the District Court could only extend P 15 of the Decree, as that was the only provision for which the court specifically found NJDOC to be non-compliant. Finally, NJDOC asserts that the District Court made no findings of changed circumstances that wer e sufficient to support a modification of the Decree. Although the plaintiffs contend that NJDOC's non-compliance was such a changed circumstance, NJDOC rejoins that a court's compliance enforcing power, not its modification power, is the proper means for addressing a party's non-compliance. NJDOC further argues that, even if a party's non-compliance is a changed circumstance warranting modification, the only non-compliance by NJDOC that the District found was non-compliance with P 15, which was not a sufficiently

16

significant change in circumstances to warrant modification.

A. Did the Language of the Decree Give the District Court the Power to Extend the Decree?

A consent decree is a hybrid of a contract and a court order. A decree embodies the agr eement of the parties and as such is in some respects contractual in nature; however, a decree is also in the form of a judicial order that the parties expect will be subject to the rules generally applicable to other judgments and orders. See Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367, 378 (1992).

1. Standard of Review

We first address a threshold question concerning the proper standard for our review of the District Court's construction and interpretation of the Consent Decree. Because of the hybrid contractual/court order status of a consent decree, there is some confusion in the courts (and disagreement among the parties) as to what standard of review we should apply here. NJDOC states that our review is simply plenary, and cites to a Seventh Cir cuit case for support: United States v. Board of Education of Chicago, 717 F.2d 378, 382 (7th Cir. 1983) ("[T]he interpretation of consent decree provisions, like the interpretation of contract provisions, is a matter of law and subject to plenary review on appeal."). As the DOJ points out, however, immediately after stating that the standard of review is plenary, Board of Education of Chicago then states that "[t]he district court's views on interpr etation, however, are entitled to deference." Id.

Numerous other cases also take this seemingly contradictory "plenary, but deferential" approach to the review of a district court's interpretation or construction of a consent decree. See, e.g., Sault Ste. Marie Tribe of Chippawa Indians v. Engler, 146 F.3d 367, 371–72 (6th Cir. 1998) (holding that "deferential de novo" is the proper standard of review for a district court's interpretation its a consent decree); Goluba v. School Dist. of Ripon, 45 F.3d 1035, 1037–38 & n.5 (7th Cir. 1995) (applying deferential de novo review to district court's interpr etation of a consent

17

decree, and noting further that abuse of discr etion review is appropriate where "the judge oversaw the consent decree for an extended period of time and the decree is particularly complex or intricate"); Officers for Justice v. Civil Serv. Comm'n, 934 F.2d 1092, 1094 (9th Cir . 1991) (applying deferential de novo review); Ber ger v. Heckler, 771 F.2d 1556, 1576 n.32 (2d Cir. 1985) (applying deferential de novo because "few persons are in a better position to understand the meaning of a consent decree than the district judge who oversaw and approved it").

This Court, in contrast, has held many times that a district court's construction and interpretation of a consent decree is subject to straightforward plenary or de novo review. See United States v. New Jersey, 194 F.3d 426, 430 (3d Cir. 1999) ("Whether extrinsic evidence is required to interpret a consent decree is itself a question of law subject to plenary review."); Harris v. Philadelphia, 137 F.3d 209, 212 (3d Cir. 1998) ("Since consent decr ees have the attributes of contracts voluntarily undertaken, we exercise plenary review over a district court's construction of a consent decree."); Washington Hosp. v. White, 889 F.2d 1294, 1299 (3d Cir. 1989) (stating that the construction of a court–ordered stipulation, which was"functionally equivalent to a consent order or consent decr ee, . . . is a matter of law over which we exercise plenary r eview"); Thermice Corp. v. Viston Corp., 832 F .2d 248, 252 (3d Cir. 1987) (stating that the question of whether extrinsic evidence is necessary for the interpretation of a consent decree is a question of law subject to plenary review); Fox v. United States Dept. of Housing, 680 F .2d 315, 319–20 (3d Cir. 1982) (same).[8]

_____

8. Against this phalanx of authority, ther e is one Third Circuit case that can possibly be read as implicitly adopting the deferential de novo standard for review of a district court's interpretation of a consent decree. In Halderman v. Pennhurst State School & Hospital, 901 F.2d 311 (3d Cir. 1990), the panel at one point notes that it has plenary review over the construction of a settlement agreement that is in the manner of a consent decree, but then states later that, because the district court had "extensive experience" with the case and the final settlement agreement between the parties, the district court's conclusions about the meaning of the agreement's jurisdictional pr ovisions should be given

We also think that the Third Cir cuit position is the more reasonable one, because the concept of "deferential de novo" (or "deferential plenary") r eview seems to be an oxymoron. Black's Law Dictionary defines"de novo" as "[a]new, afresh, a second time," and defines "plenary" as "[f]ull, entire, complete, absolute, per fect, unqualified." Black's Law Dictionary 392, 1038 (5th ed. 1979). These are, of course, familiar notions to appellate judges, the sinews of our everyday work. It strains imagination to conceive how our review could be both "anew, complete, absolute and unqualified," while at the very same time defer ential to the District Court's interpretation. Review that gives deference to the decision that is under review is simply not absolute and unqualified review. The courts that apply"deferential de novo" do not explain how they amalgamate these two seemingly incompatible standards.9  We decline to follow

_____

"some deference." Id. at 319 n.11, 320. Halderman cites no Third Circuit
case as support for its decision to give defer ence to the district
court's
construction of the consent decree, but instead cites the Ninth Circuit
case of Keith v. Volpe, 784 F .2d 1457 (9th Cir. 1986).

We read Halderman's statement about deference as a function of the
unique character and long history of the Pennhurst litigation and a nod
to the stewardship, and memorable imprint on that litigation, of the
extraordinary District Judge who handled it, the late Raymond J.
Broderick. See, e.g., 446 F. Supp. 1295 (E.D. Pa. 1977); 533 F. Supp.
661 (E.D. Pa. 1982); 567 F. Supp. 1504 (E.D. Pa. 1983); 610 F. Supp.
1221 (E.D. Pa. 1985), 784 F. Supp 215 (E.D. Pa. 1992). We do not think
that the panel intended to contravene established Third Circuit case law.
See supra at 21–22. However, to the extent that Halderman is read to be
inconsistent with earlier case law, the earlier case law providing for
straightforward plenary review contr ols. See O. Hommel Co. v. Ferro
Corp., 659 F.2d 340, 354 (3d Cir. 1981) (stating that, according to Third
Circuit Internal Operating Procedur es, one panel cannot overrule a prior
panel precedent, and giving effect to the earlier of two inconsistent
Third
Circuit opinions).

9. The panel in Sault Ste. Marie Tribe of Chippawa Indians v. Engler, 146
F.3d 367 (6th Cir. 1998), recognized the self-contradictory nature of
"deferential de novo" and interpr eted it to mean that the district
court's
interpretation should be used as an additional tool for contract
interpretation. See id. at 371. Of course, this kind of review would be
neither deferential nor de novo: since the district court's interpretation

19

these other courts and instead adhere to the long tradition in this Circuit of reviewing a district court's interpretation of a consent decree de novo.

## 2. Whether the Language of the Consent Decree Gave the District Court the Power to Extend the Decree

As noted above, the District Court at the July 7 hearing explained how it interpreted the language of the Consent Decree as giving the court the power to extend the Decree. The sections that the court used in its analysis provide:

> General Injunctive Relief
>
> 3. The State defendants and their employees, consistent with their obligations under current law, shall not engage in any act or practice that has the purpose or effect of unlawfully discriminating against any employee in the NJDOC in any term or condition of employment because of such employee's race (black) or sex (female), including, but not limited to, creating, maintaining, supporting or condoning a racially or sexually hostile work environment.
>
> * * * *
>
> 59. . . . . Any dispute within the scope of this Decree which, in the reasonable opinion of counsel, cannot be effectively resolved through the procedures set forth in this Decree, may be brought to the attention of Judge Pisano, provided that prior thereto counsel have conferred and have engaged in good faith efforts to resolve it.
>
> * * * *
>
> Jurisdiction of the Court
>
> 63. This Court shall retain jurisdiction of the matters covered by this Decree for a period of four (4) years

_____

would merely be one more interpretive tool among many, the interpretation would not be accorded deference, but the review would not be de novo either, because it would accommodate the interpretation of the lower court in some fashion. Thus, Sault Ste. Marie's "deferential de novo" review is simply a misleading name for some level of review between deferential and de novo--in reality, a hodgepodge standard.

from the date of entry of this Decree for such action as may be necessary or appropriate to effectuate the purposes of this Decree. The provisions of this Decree shall be in effect for a period of four (4) years from the date of entry of this Decree, at which time all obligations under this Decree shall end.

64. Any party may seek to modify the pr ocedures enumerated in this Decree, provided that the proposed modifications effectuate the purposes of this Decree.10

The court began its analysis by noting that P 3 of the Decree, entitled "General Injunctive Relief," broadly prohibits NJDOC from engaging in any unlawful racial or gender employment discrimination; the court interpr eted this section as meaning that one of the purposes of the Decree was to empower the court to provide broad injunctive relief in response to any discriminatory activity by NJDOC, thus giving the court the power to extend the Decree if necessary to prevent discrimination by NJDOC. The District Court observed that P 63 of the Decree gives the court jurisdiction over matters covered by the Decree for four years, and that P 59 provides that disputes that cannot be resolved by the parties on their own can be brought to the District Court for resolution. The court then concluded that

I find in order to effectuate the purposes of this Decree, that I needed to extend it for a period of time, and the order extending the Decree was made within the four years of its initial term of existence. So, Ifind that there is language in the Decree itself, if a Court were to consider this as a matter of contract interpr etation or enforcement of a settlement agreement, to more than justify the Court's extension.

In sum, the District Court concluded that the first sentence of P 63 and the whole of P 64 gave it the power to extend the Decree in order to effectuate the substance of P 3 or resolve a dispute under the guidelines of P 59, as long as the court ordered such an extension within the four year period of jurisdiction provided by P 63.

_____

10. All the parties understand the term"Any party" here to include the District Court.

21

NJDOC responds that the language of the Decr ee, specifically the second sentence of P 63 ("the previous shall be in effect for a period of four years . . . at which time all obligations under this Decree shall end"), clearly and unambiguously establishes that both the District Court's jurisdiction and NJDOC's obligations under the Decree end four years after the Decree is entered, i.e., May 10, 2000. It submits that, because there is no provision in the rest of the Decree that specifically allows the District Court to extend its jurisdiction, the court lacked such power under the express terms of the Decree. NJDOC argues further that P 64 reserved to the court only a limited right "to modify the procedures enumerated in the Decree", and that no power to modify non-procedural aspects was given to the court; in its view, the length of time of the Decr ee is clearly a non-procedural element of the Decree. Therefore, NJDOC contends, its obligations under the Decree ter minated on May 10, 2000, and the Decree did not expr essly grant the District Court any power to modify this provision.11

_____

11. NJDOC also argues that, if we conclude that P 63 is ambiguous regarding whether the District Court has the power to modify the Decree by extending it, extrinsic evidence from the negotiations over the language of the Decree supports NJDOC's r eading. During these negotiations, the DOJ originally proposed afive year period for the Decree, with the following proviso: "This period may be extended by the order of this Court for good cause shown." NJDOC countered with the following: "The provisions of this decr ee shall be in effect for a period of two years from the date of the entry of this decree, at which time all obligations under this decree shall end." NJDOC contends, quite forcefully, that, because the Decree asfinally agreed upon did not contain the extension for good cause language, we should conclude that the parties intended to omit the court's power to extend for good cause from the Decree.

Class counsel counters that the "good cause" language may have been omitted because it was redundant, not because the parties decided to omit this power from the Decree. W e find this argument lacking in merit. No other part of the Decree clearly gives the District Court power to extend the Decree for good cause, and it seems quite unlikely that parties would strike out clear language because it was redundant of other, unclear language. Class counsel contends that the parties may have considered the language redundant of the District Court's inherent equitable power to modify a decree. If that was the case, however, the

22

Class counsel and the DOJ reply with three arguments. First, they assert that we should apply "deferential de novo" review to the District Court's interpretation of the Consent Decree; we have already explained above why we reject this contention. Second, the plaintiffs contend that the first sentence of P 63, which provides that the District Court has jurisdiction to take "such action as may be necessary or appropriate to effectuate the purposes of this Decree," was broad enough to empower the court to extend the Decree in response to violations and delays in implementing the provisions of the Decree that threatened to undermine attainment of the Decree's purposes. The District Court's summary of the Decree's purposes is set forth in the margin.12

Third, plaintiffs rely on P 64, which provides that the District Court may "modify the procedures enumerated in this Decree, provided that the proposed modifications effectuate the purposes of this Decree." Plaintiffs submit that the extension of the Decree is not a modification of the parties' substantive duties under the Decree, but is simply a modification of the amount of time that they are subject to these duties. The plaintiffs add that four previous modifications of time limits under the Decree have been effected under the procedural modification provision in P 64, and thus urge that this provision gives the District

_____

court extended the Decree based on this equitable power rather than upon an express Decree provision; we address this basis for the Decree extension in Section II.B. infra. At all events, while NJDOC has the better part of this argument, and its extrinsic evidence provides some support for its interpretation of the Decree, we need not resort to this extrinsic evidence, because we conclude that the Decree's express terms do not give the District Court the power to extend the Decree.

12. The District Court summarized the purposes of the Consent Decree in its May 10, 1996, Order and opinion approving the Decree:

    [T]o completely overhaul the NJDOC's current practices in handling
    complaints of racial and sexual discrimination and any resultant
    retaliation; to ensure that supervisors and employees who
    discriminate, harass, or retaliate against complainants receive
    appropriate discipline; and to alleviate the hostile work
environment
    that is alleged to pervade the NJDOC by providing extensive
training
    for all supervisors and employees.

23

Court the power to extend the time limit of the Decree itself.

We are not persuaded by the plaintiffs' arguments. The clear language of P 63 states that the Decree ends after four years. The plaintiffs' arguments, considered together, at most show that the first sentence of P 63 and P 64 may imply that the District Court has the power to extend the Decree under the Decree's terms. However, the clear language of the second sentence of P 63, explicitly limiting the Decree time period to four years while not providing any express means for the District Court to extend this time period, see supra note 11, trumps this possible implication of the first sentence of P 63 and P 64.

A court should interpret a consent decree as written and should not impose terms when the parties did not agree to those terms. See Halderman v. Pennhurst State Sch. & Hosp., 901 F.2d 311, 319 (3d Cir. 1990). Interpreting the Decree as expressly giving the District Court the power to extend the Decree beyond its four year term flies in the face of the clear language of P 63. Furthermore, we are convinced that the extension of the Decree beyond its four year term, rather than being a mere procedural modification covered by P 64, effects a modification of NJDOC's substantive duties under the Decree, for the amount of time that NJDOC is subject to the Decree provisions is a substantive element of the Decree. We thus defer to the clear language of P 63 and hold that the language of the Decree cannot be used to justify the District Court's extension.

B. Did the District Court Properly Extend the Decree via an Exercise of its Own Inherent Equitable Powers?

1.

The District Court also based the Decree extension on: (1) its inherent power to enforce compliance with its consent decrees; and (2) its inherent power to modify consent decrees. We review a district court's orders to enforce compliance with or to modify a consent decree for abuse of discretion. See EEOC v. Local 580, 925 F.2d 588, 594–95

24

(2d Cir. 1991); Delaware V alley Citizens' Council for Clean Air v. Pennsylvania, 674 F.2d 976, 978 (3d Cir. 1982). However, the District Court's conclusions about the scope of its inherent powers is a question of law that is reviewed de novo. See Daniel S. v. Scranton Sch. Dist. , 230 F.3d 90, 97 (3d Cir. 2000) (stating that questions of law are reviewed de novo).

As we noted at the outset, there is no doubt that the District Court possesses these two powers. See Spallone v. United States, 493 U.S. 265, 276 (1990) ("[C]ourts have inherent power to enforce compliance with their lawful orders . . . .") (internal quotations and citation omitted); United States v. United Shoe Mach. Corp., 391 U.S. 244, 248–49 (1968) (holding that a court can modify a consent decree "upon an appropriate showing" of "the specific facts and circumstances" in the particular case); Delaware Valley Citizens' Council for Clean Air, 674 F.2d at 980 (stating that a provision in a consent decree that gave the court the power to modify the decree "is merely declaratory of a district court's inherent power to modify a consent decree, even over the objection of one of the parties"). Because the District Court seems to have concluded that it had the power to extend the Decree as an exercise of either its compliance enforcement or modification power , we begin our analysis by considering the extent of these two powers.13

---

13. We note that previous cases have not expressly bifurcated the doctrine between the modification and compliance enforcement powers in the manner that we do here. Rather, the cases have addressed either just the modification power or just the compliance enforcement power, and thus had no occasion for an overview. We are satisfied, however, that an examination of the relevant case law supports our approach, as there are distinct bodies of jurisprudence and different standards associated with the compliance enforcement and modification powers. Compare Spallone v. United States, 493 U.S. 265 (1990), and Shillitani v. United States, 384 U.S. 364 (1966) (addr essing courts' compliance enforcement power) with Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367 (1992), and United States v. United Shoe Mach. Corp., 391 U.S. 244 (1968) (addressing courts' modification power). Furthermore, we believe that clearly differentiating between the modification and compliance enforcement powers would serve to clarify the law and facilitate district courts' proper exercise of these powers.

It is well-settled that a court has broad equitable power to fashion a remedy while modifying a consent decree, and has similarly broad equitable power when enforcing compliance with a decree if the decree is aimed at remedying discrimination, as is the Consent Decree in the case at bar. See Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367, 381 & n.6 (1992) (recognizing that a court's modification power "is long-established, broad, and flexible," and that a court should apply "aflexible modification standard in institutional reform litigation") (internal quotes and citation omitted); Spallone, 493 U.S. at 276 ("When a district court's [compliance enforcement] order is necessary to remedy past discrimination, the court has an additional basis for the exercise of broad equitable powers.").

Furthermore, the broad remedial power contained within the modification and compliance enforcement powers can be used to extend a consent decree.14  See Chrysler Corp. v.

_____

14. In certain places in its brief, NJDOC seems to argue that a court can exercise the compliance enforcement power only via its contempt power, and that because the District Court never held NJDOC in contempt, its use of the compliance power was illegitimate. This argument is unavailing for several reasons. First, in support of its claim NJDOC quotes the following sentence from Spallone, 493 U.S. at 276: "[C]ourts have inherent power to enforce compliance with their lawful orders through civil contempt." Of course, this sentence does not state that courts can enforce compliance only through civil contempt, but that they can enforce compliance via contempt. Furthermore, NJDOC omits the sentence that immediately follows the above quote from Spallone: "When a district court's order is necessary to remedy past discrimination, the court has an additional basis for the exercise of broad equitable powers," id., which implies that a court has expansive powers that go beyond its contempt power when it is remedying past discrimination, as is the situation in the case before us. Second, there is case law that directly and clearly contradicts NJDOC's claim that a court can exercise its compliance enforcement power only via its contempt power. In Berger v. Heckler, 771 F.2d 1556 (2d Cir. 1985), the Second Circuit stated that "[e]nsuring compliance with a prior order is an equitable goal which a court is empowered to pursue even absent afinding of contempt." Id. at 1569 (citing Alexander v. Hill, 707 F.2d 780, 783 (4th Cir. 1983)) (emphasis added); see also Halderman v. Pennhurst State Sch. & Hosp., 901 F.2d 311, 316 & n.5 (3d Cir. 1990) (affirming the district court's

26

United States, 316 U.S. 556 (1942) (affir ming the extension of a consent decree via the district court's exercise of its modification power);15 United States v. Local 359, United Seafood Workers, 55 F.3d 64, 69 (2d Cir. 1995) (holding that "it was well within the district court's inherent power" to extend parts of a consent judgment decree as an exercise of the court's compliance enforcement power). However, because a court's compliance enforcement power is "not unlimited," Spallone, 493 U.S. at 276, a court may use its compliance enforcement power to extend one or more provisions of a decree only if such compliance enforcement is essential to remedy the violation and thus provide the parties with the relief originally bargained for in the consent order. As the Second Circuit noted in Local 359, "[u]ntil parties to such an instrument have fulfilled their express obligations, the court has continuing authority and discretion––pursuant to its independent, juridical interests ––to ensure compliance." 55 F.3d at 69 (quoting EEOC v. Local 580, 925 F.2d 588, 593 (2d Cir. 1991)).

A court must abide by similar standards when using its modification power to extend a decree. In their arguments on the modification standard, the plaintif fs cite cases from the Sixth Circuit which seem to adopt a br oader standard than we think is supported by the Supreme Court jurisprudence on this issue. In Heath v. De Cour cy, 888 F.2d 1105 (6th Cir. 1989), the court stated that "[t]o modify [institutional reform] consent decr ees, the court need only

_____

extension of the term of certain parts of a court–approved settlement agreement because of non–compliance by defendant; the district court considered holding defendant in contempt but opted not to). Finally, the District Court was quite clear that it could have held NJDOC in contempt for its non–compliance, but it chose not to out of respect for NJDOC's difficult mission.

15. Although Chrysler involved a consent decree that explicitly gave the district court jurisdiction to modify the decr ee, the Supreme Court has held that provisions in a consent decree that give a court the power to modify the decree are merely declaratory of a district court's inherent modification power. See United States v. Swift & Co., 286 U.S. 106, 114 (1932); see also Delaware Valley Citizens' Council for Clean Air v. Pennsylvania, 674 F.2d 976, 980 (3d Cir . 1982).

27

identify a defect or deficiency in its original decree which impedes achieving its goal. . . . A modification will be upheld if it furthers the original purpose of the decree in a more efficient way . . . ." Id. at 1110; see also Vanguards of Cleveland v. City of Cleveland, 23 F.3d 1013, 1018 (6th Cir. 1994) (quoting above language from Heath ). We do not think, however, that a district court has the power to modify a decree upon identifying merely a"defect or deficiency" in the decree or a "mor e efficient way" of furthering the decree's purpose. We conclude instead that a district court may modify a consent decree (in response to a request from a plaintiff) only upon making a finding that conditions have changed so that the "basic purpose of the original consent decree" has been "thwart[ed]," Chrysler, 316 U.S. at 562, meaning that "time and experience have demonstrated" that "the decree has failed to accomplish th[e] result" that it was "specifically designed to achieve," United Shoe, 391 U.S. at 249.16 Merely identifying a more efficient way of carrying out a decree does not justify a district court modifying that decree.

Courts have extended a decree or parts of a decree when a change in circumstances thwarted the basic purpose and intent of the decree, see Chrysler, 316 U.S. at 562–64,

_____

16. NJDOC argues that the more r estrictive standard from Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367 (1992), should be used to determine whether this Decree can be modified. In Rufo, the Supreme Court held that a "party seeking modification of a consent decree may meet its initial burden by showing a significant change either in factual conditions or in law," and a change in factual conditions usually must "make compliance with the decree substantially more onerous" and must be unanticipated by the party seeking modification. See id. at 384–85. Rufo, however, set the standard for cases in which the defendant seeks to have a decree modified, while in the case at bar it is the plaintiffs seeking modification. The Supreme Court has set a more rigorous standard for defendants seeking modification because defendants usually seek modification "not to achieve the purposes of the provisions of the decree, but to escape their impact." United States v. United Shoe Mach. Corp. 391 U.S. 244, 249 (1968); see also United States v. Local 560, 974 F.2d 315, 331–32 & n.9 (3d Cir . 1992) (noting that the United Shoe standard applies when a plaintif f is seeking modification of a decree, while Rufo's more restrictive standard applies when a defendant is seeking modification).

28

when there had been "pervasive violations" of the decree by one party, see Local 359, 55 F.3d at 69, and when one party was in substantial non-compliance with the decree, see Halderman v. Pennhurst State Sch. & Hosp. , 901 F.2d 311, 316 (3d Cir. 1990); Pennsylvania v. Local Union 542, 807 F.2d 330 (3d Cir. 1986).

2.

Even if a court has the power to modify or enfor ce compliance with a consent decree, it must support its issuance of such an order with specific findings of fact. See Hughes v. United States, 342 U.S. 353, 357–58 (1952) (holding that an adequate hearing and findings of fact are required for exercise of modification power); Harris v. City of Philadelphia, 137 F.3d 209, 213–14 (3d Cir. 1998) (holding that the district court's expansion of a consent decree could not be interpreted as a pr oper exercise of the court's compliance enforcement power because nofinding had been made of the party's lack of compliance); Pennsylvania v. Local Union 542, 807 F.2d 330, 332, 335, 338–39 (3d Cir. 1986) (upholding district court's two–year extension of a consent decree because district court's clear and detailed factual findings showed that the party's non–compliance frustrated the purposes of the decr ee).

The determination of whether the District Court appropriately exercised its modification or compliance enforcement power in extending the Decr ee in this case turns on whether the District Court corr ectly conceived the limits of its authority and made adequate legal conclusions and factual findings to support its exercise of one of these powers. More specifically, the key issue is whether the District Court clearly specified a proper legal basis for its extension of the Decree, and then either made adequate findings of non–compliance by NJDOC to justify extending the entire Decree for ten months, or made adequate findings of changed circumstances to justify modifying the Decree by extending it.

The District Court vacillated over whether it was using the compliance enforcement or the modification power to extend the Decree; the court seems to have (implicitly)

29

concluded that it was justified in using either power, or perhaps some combination of the two. See Tr. of July 7, 2000 hearing at 29-32. We conclude that the District Court's findings of fact were insufficient to justify its use of either the modification or the compliance enfor cement powers. The only finding that the District Court made with any specificity was the finding in the May 10 Or der that NJDOC was not in substantial compliance with P 15 of the Consent Decree: "[U]ntil approximately the first quarter of 2000 the State [of New Jersey] was not in substantial compliance with the consent decree, principally in connection with its obligation to issue timely decisions regarding discrimination complaints." Beyond this finding, the District Court merely noted certain "issues," "problems," and "disputes" that had arisen between the parties during the course of the four year Decr ee, and reasoned that there was "enough of a r ecord made on issues other than the timing of the EED decisions" to justify the extension of the entire Decree.

The District Court did not make any specific findings of fact regarding these "issues" in the May 10 and July 25 Orders or at the May 8 and July 7 hearings. The court declined to make such findings even after the plaintiffs, realizing that the court's factual findings were likely insufficient to support the extension of the entir e Decree, moved the court for specific findings of non-compliance by NJDOC following the issuance of the May 10 Or der. Instead, in an exercise of inchoate incorporation by reference in its July 25 Memorandum, the District Court pointed to "the transcripts of several hearings held over the past year" as sufficient factual findings to support its extension of the Decree. The District Court also noted that the plaintiffs had "raised a claim of discriminatory discipline" by NJDOC, and concluded that this too required it to extend the Decree. Significantly, however, the court did not find that NJDOC had engaged in discriminatory discipline, but only observed that the plaintif fs had claimed that NJDOC had done so.

These "findings"--oblique references to unspecified sections of hearing transcripts compiled over the course of a year, and taking notice of an allegation made by the

30

plaintiffs--are not sufficient to support the District Court's extension of the entire Decree as an exer cise of either its compliance enforcement or its modification power. First, an unadjudicated allegation by one party is not a pr oper basis for extending a consent decree. Second, the court's references to problems with the Decr ee (other than with P 15) that arose in hearings "held over the past year" are random and unspecific, and would requir e us to rummage through the record to determine exactly what these findings are. But a Court of Appeals should not be r equired to scour the District Court's records and transcripts, without specific guidance, in order to construct specific findings of fact that support the District Court's Order; rather, the District Court should make specific findings in the first place to facilitate proper appellate review. See Mayo v. Lakeland Highlands Canning Co., 309 U.S. 310, 317 (1940); Bradley v. Pittsburgh Bd. of Educ., 910 F .2d 1172, 1178 (3d Cir. 1990).

Thus, the District Court's extension of the Decr ee cannot be justified as a proper exercise of the court's modification power under the rule set out in Chrysler Corp. v. United States, 316 U.S. 556, 562 (1942), and United States v. United Shoe Machinery Corp., 391 U.S. 244, 249 (1968), because the court did not make a finding of changed circumstances that thwarted the basic purpose behind the Decree such that the Decree failed to accomplish its designed result. Furthermore, the extension of the entire Decree cannot be justified as a valid exer cise of the court's compliance enforcement power, because the court's very limited findings did not show that extending the whole Decree was necessary to remedy the violation and thus provide the parties with what they originally bargained for.

There may have been various breaches of the Consent Decree by NJDOC that would support the extension of other sections or even the entire Decree, but we are not in a position to discern that from the r ecord before us. The District Court is intimately familiar with the cir cumstances surrounding the Consent Decree as well as the actions of the parties with respect to their compliance with that Decree, and it is therefore for that court to make specific findings in these areas if it decides to extend the Decree.

31

See EEOC v. Local 580, 925 F.2d 588, 594-95 (2d Cir. 1991) (upholding district court's orders enfor cing compliance with a consent decree because district court recounted in detail relevant portions of the history of the litigation, thereby establishing a specific factual record of the party's non-compliance with the decree). Because the District Court failed to make such specific findings, we must vacate its order extending the Decr ee and remand the case to that court for such further findings of fact.

As we noted earlier, the District Court did make a specific finding that NJDOC was in substantial non-compliance with P 15 of the Decree. This finding would be sufficient to support an extension of that section of the Decr ee, along with any other section that is necessary for r emedying this non-compliance with P 15, but this extension would have to be limited to only those sections. Cf. Halder man v. Pennhurst State Sch. & Hosp., 901 F.2d 311 (3d Cir. 1990) (affirming district court's extension of certain specific provisions of a consent decree beyond the original deadline for these provisions contained within the decr ee in order to remedy the defendants' non-compliance after district court made specific findings that the defendants wer e not in substantial compliance with these decree sections); United States v. Local 359, United Seafood Workers , 55 F.3d 64 (2d Cir. 1995) (affirming the district court's extension of a specific aspect of a consent decree--the term of an administrator appointed under the terms of the decree-- because that extension was necessary to ensur e compliance by a non-compliant party). Although the District Court's "interest in protecting the integrity of such a decree justifies any reasonable action taken by the court to secure compliance," Local 359, 55 F.3d at 69 (internal quotations and citations omitted), the court's extension of the entire Decree based on NJDOC's non-compliance with only one minor part of it would not be reasonable, especially in light of the Supreme Court's admonition that a court's compliance enforcement power is "not unlimited." Spallone v. United States, 493 U.S. 265, 276 (1990).

On remand, the District Court should be clear as to which inherent power--compliance enfor cement or modification--it is using as the basis for extending the

Decree. From what we can glean from the District Court's incomplete findings, the facts of this case seem to fit more closely with an exercise of the court's compliance enforcement power, as the extension of the Decree here seems most accurately described as an order r emedying a party's non-compliance rather than a modification in response to changed circumstances.

The plaintiffs counter that NJDOC's non-compliance is a "change in circumstances" from those in place when the Decree was entered into, and the court's exercise of its modification power was justified because this non-compliance thwarted the "basic purpose" of the Decree and the Decree has thereby "failed to accomplish" its intended result. See Chrysler Corp. v. United States , 316 U.S. 556, 562 (1942); United States v. United Shoe Mach. Corp., 391 U.S. 244, 249 (1968); see also Akers v. Ohio Dep't of Liquor Control, 902 F.2d 477 (6th Cir . 1990) (holding that it was an abuse of discretion for the district court to refuse to modify a consent decree by extending it when the parties originally intended to provide for four years of reports on compliance with the decree and the district court's nearly four-year stay of the decree's reporting requirement thwarted this basic purpose). We think, however, that the plaintiffs' approach would in effect lead to the modification power swallowing the compliance enforcement power--every act of non-compliance would also be a changed circumstance, potentially justifying modification. This approach was rejected by the Seventh Cir cuit in South v. Rowe, 759 F.2d 610 (7th Cir. 1985), where the court held that a party's violation of a consent decree did not constitute an extraordinary or unforeseeable changed circumstance, so modification of the decr ee was not appropriate in response to such non-compliance. See id. at 614. Because there are distinct bodies of jurisprudence and different standards associated with the compliance enforcement and modification powers, we believe that a district court should relegate these powers to their respective spheres. See supra note 13. That is, a district court should use its compliance enforcement power when a party to a decree violates the decree, and use its modification power when circumstances surr ounding the

33

decree (other than the parties' actions) ar e sufficiently changed.17

If the District Court decides on remand to use its compliance enforcement power to extend the Decr ee, the court must make specific findings regar ding the exact Decree sections with which NJDOC failed to comply, and must determine which sections of the Decr ee must be extended to remedy this non-compliance and thus provide the parties with the relief that was originally bargained for in the Decree. See Halderman, 901 F.2d at 316, 321-25; Local 359, 55 F.3d at 69. On the other hand, if the court decides to use its modification power to extend the decree, it must make specific findings on how changed circumstances (which would not include NJDOC's non-compliance simpliciter) have stymied the objectives the parties intended to achieve with the Decree. See Chrysler, 316 U.S. at 562; United Shoe, 391 U.S. at 249. Specifically, the court should apply the standard for plaintiff-requested decree modification that, as we noted earlier , is set forth in Chrysler and United Shoe: a court can modify a consent decree "in adaption to changed circumstances" if "time and

_____

17. There is a Third Circuit case that seems at first glance to have implicitly accepted the use of the modification power to remedy a party's non-compliance. In Pennsylvania v. Local Union 542, 807 F.2d 330 (3d Cir. 1986), we affirmed the district court's modification of an injunctive decree (which extended the decree for two years) even though the district court modified the decree because of defendant's non-compliance. However, the issue of whether it was pr oper to modify the decree in response to non-compliance was not befor e us in Local Union 542, as we expressly noted that the non-compliant party did not challenge the district court's power to modify the decree. See id. at 334.

In a sense, our distinguishing of the modification and compliance enforcement powers is arguably a mer e exercise in semantics, as a court's use of its compliance enforcement power to extend a consent decree seems on its face to be a modification of the decree's terms. But because of the different standards and bodies of jurisprudence associated with these two powers, we think it is important to keep these powers distinct. There are situations in which the application of these different standards would lead to different outcomes (e.g., a court's order may meet the standard for a proper exer cise of the court's modification power but not meet the standard for the compliance enforcement power), so jurisprudential concerns mandate the separation of these powers.

34

experience have demonstrated" that "the decr ee has failed to accomplish" its objectives. United Shoe , 391 U.S. at 248-49; see also Pennsylvania v. Local Union 542, 807 F.2d 330, 334 (3d Cir. 1986) (citing United Shoe  as the applicable standard for district court's modification of consent decree when the plaintiff seeks to have decree modified because the decree has not achieved the intended r esult).

Furthermore, if the District Court uses its modification power to extend the Decree, then the court should tailor the modification to account for the changed cir cumstances and to achieve the original Decree objectives. See United Shoe, 391 U.S. at 252 ("[T]he District Court should modify the decree so as to achieve the requir ed result . . . ."); United States v. Local 560, 974 F.2d 315, 333 (3d Cir. 1992) (holding that district court should modify decr ee to the extent that such a modification "is necessary to accomplish the remedy sought by the original equitable decree"); see also Rufo v. Inmates of Suffolk County Jail , 502 U.S. 367, 391 (1992) (holding that, if a decree modification is found to be warranted, the district court should then make sure that the modification is "tailored to r esolve the problems created by the change in circumstances").

In sum, the District Court must make specificfindings to support its extension of the Consent Decree, and it must tailor this extension to fit with these findings. Given the record before us, we believe that an extension in this case would likely involve an exercise of the District Court's compliance enforcement power, but of course the court must itself decide which of the two powers is implicated by the specific findings it will make.18

_____

18. The plaintiffs' cross-appeal can be dealt with summarily. First, class counsel argues that the District Court's denial of the plaintiffs' motion to hold NJDOC in contempt was based on an error of law and unsupported factual assumptions. "Our review of the denial of a contempt motion is for abuse of discretion by the district court. Reversal is appropriate only where the denial is based on an error of law or a finding of fact that is clearly erroneous." Roe v. Operation Rescue, 54 F.3d 133, 137 (3d Cir. 1995) (internal quotations omitted). Class counsel's argument here is based on an offhand comment that the District Court made in an oral argument hearing on a contempt motion that is not the one at issue in this appeal; we find this argument to be completely without merit.

Conclusion

For the foregoing reasons, the District Court's May 10, 2000 Order extending the entire Consent Decree will be vacated, and the District Court's July 25, 2000 Or der denying the plaintiffs' motion for re-ar gument on their motion for contempt and denying the plaintif f 's motion to extend the Decree for two years will be affir med. The case will be remanded to the District Court for further proceedings consistent with this opinion. Parties to bear their own costs.

The mandate shall issue forthwith.

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit

_____

The plaintiffs' second argument on cr oss-appeal is that the District Court erred when it only extended the Consent Decree for ten months, rather than for the two years that the plaintif fs asked for. We review a district court's decision to modify or to refuse to modify a consent decree
for abuse of discretion. See Delawar e Valley Citizens' Council for Clean Air v. Pennsylvania, 674 F.2d 976, 978 (3d Cir. 1982). The plaintiffs contend that NJDOC's "pervasive pattern of delayed compliance and downright non-compliance with the Decree" called for a two year extension of the Decree, so that the court's ten month extension was an abuse of discretion. This claim fails because we concluded above that the District Court did not make sufficient factualfindings of NJDOC's non-compliance to extend any part of the Decree besides P 15. Because the District Court's factual findings did not support the extension of the entire Decree for ten months, the court could not have abused its discretion by failing to extend the Decr ee for an even longer period of time.

36